CHAMBERS ET AL., APPELLANTS, *v.* MERRELL-DOW PHARMACEUTICALS, INC., APPELLEE.

[Cite as Chambers *v.* Merrell-Dow Pharmaceuticals, Inc. (1988), 35 Ohio St. 3d 123.]

(No. 87-276—Decided February 10, 1988.)

124

*Waite, Schneider, Bayless & Chesley Co., L.P.A., Stanley M. Chesley, Jerome L. Skinner, Law Office of George A. Kokus, George A. Kokus, Felicia Smith, Allen T. Eaton & Associates* and *Allen T. Eaton,* for appellants Chambers et al.

*Santen, Shaffer & Hughes* and *William B. Singer,* for appellant Dodsworth.

*Dinsmore & Shohl, Frank C.*

*Woodside III, K. C. Green, Riker, Danzig, Scherer, Hyland & Perretti, Peter N. Perretti, Jr., Douglas Eakeley* and *Susan Scott,* for appellee.

*Grieser, Schafer, Blumenstiel & Slane Co., L.P.A., C. Richard Grieser* and *Mark A. Adams,* urging reversal for *amici curiae,* Richard Grieser et al.

HOLMES, J. The sole issue raised upon appeal is whether the trial court erred in dismissing these actions utilizing the common-law doctrine of *forum non conveniens.* Because we view the cautious application of this doctrine, which allows a court having proper jurisdiction to dismiss an action when to do so would further the ends of justice and promote the convenience of the parties, as an inherent power of the trial court, resting within its sound discretion, and because we find the lower court did not abuse its discretion herein, we affirm the dismissals below.

I

The doctrine of *forum non conveniens* has, since its origination in Scotland in the early nineteenth century,[2] become firmly entrenched in the common law of virtually every Anglo-American jurisdiction.[3] "The principle

---

[2] In Scotland, the doctrine developed from a plea by defendants challenging the competency of a particular forum to hear an action, *forum non competens,* to a recognition of the court's discretion not to hear an action if to do so would be inconvenient to the parties and the court, *forum non conveniens.* Braucher, The Inconvenient Federal Forum (1947), 60 Harv. L. Rev. 908, 909-910; Note, The Emerging Doctrine of Forum Non Conveniens: A Comparison of the Scottish, English and United States Applications (1985), 18 Vand. J. Trans. L. 111, 114-115; and, see, *Clements* v. *Macauly* (1866), 4 M. (Sess. Cas. 3d Ser.) 583.

[3] England historically denied dismissal or stay of an action, unless to retain jurisdiction would be "vexatious," "oppress[ive]" or create "injustice" to the defendant. *Logan* v. *Bank of Scotland* (1906), 1 K.B. 141, 150. Recently, however, those narrow criteria for a stay were discarded in favor of a consideration of the "natural forum" of the case and of convenience to defendant. *Mac Shannon* v. *Rockware Glass Ltd.* (1978), 1 All E.R. 625. The English rule has since become "indistinguishable from the Scottish legal doctrine of *forum non conveniens." The Abidin Daver* (1984), 1 All E.R. 470, 476. See Note, *supra,* fn. 1, at 122-135; Note, Forum Non Conveniens — An English Doctrine? (1978), 41 Mod. L. Rev. 739; Comment, Development of the Doctrine of Forum Non Conveniens (1959), 8 De Paul L. Rev. 350.

In the United States, state courts were first to recognize and apply the doctrine before it was adopted in the federal jurisdiction by the decision in *Gulf Oil Corp.* v. *Gilbert, infra,* at 505, fn. 4. See Blair, The Doctrine of Forum Non Conveniens in Anglo-American Law (1929), 29 Colum. L. Rev. 1. At least twelve states had adopted the doctrine by 1959. *Lansverk* v. *Studebaker-Packard Corp.* (Wash. 1959), 54 Wash. 2d 124, 134, 338 P. 2d 747, 752-753 (Addendum, Note 1). Currently, thirty-nine states apply the doctrine in various circumstances.

Courts in the following thirty-three jurisdictions recognize the common-law doctrine: *Avila* v. *Chamberlain* (App. 1978), 119 Ariz. 369, 580 P. 2d 1223; *Running* v. *Southwest Freight Lines* (1957), 227 Ark. 839, 303 S.W. 2d 578; *State* v. *District Court* (Colo. 1981), 635 P. 2d 889; *State Marine Lines* v. *Domingo* (Del. 1970), 269 A. 2d 223, and *Henry David Zutz Ins., Inc.* v. *H.M.S. Associates, Ltd.* (Del. Super. 1976), 360 A. 2d 160; *Mills* v. *Aetna Fire Underwriters Ins. Co.* (D.C. App. 1986), 511 A. 2d 8; *Houston* v. *Caldwell* (Fla. 1978), 359 So. 2d 858; *Harbrecht* v. *Harrison* (1948), 38 Haw. 206; *Jones* v. *Searle Laboratories* (1982), 93 Ill. 2d 366, 67 Ill. Dec. 118, 444 N.E. 2d 157; *Silversmith* v. *Kenosha Auto Transport* (Iowa 1981), 301 N.W. 2d 725; *Quillin* v. *Hesston Corp.* (1982), 230 Kan. 591, 640 P. 2d 1195; *Carter* v. *Netherton* (Ky. 1957), 302 S.W. 2d

of *forum non conveniens* is simply that a court may resist imposition upon its jurisdiction even when jurisdiction is authorized by the letter of a general venue statute." *Gulf Oil Corp.* v. *Gilbert* (1947), 330 U.S. 501, 507. The doctrine assumes that proper jurisdiction and proper venue lie in the court which plaintiff has chosen, *id.* at 504; cf. Ohio Civ. R. 3(D), and additionally presupposes the availability of another forum in which the defendant may be sued.[4] "[T]he doctrine furnishes criteria for choice between them." *Gilbert, supra,* at 507.

The criteria set forth in *Gilbert* and other United States Supreme Court decisions are to be applied flexibly, with each case turning on its own facts. *Williams* v. *Green Bay & Western Ry. Co.* (1946), 326 U.S. 549. These factors may be divided into the private interests of the litigants and factors of public interest involving the courts and citizens of the forum. Important private interests include: "the

---

382; *Stewart* v. *Litchenburg* (1920), 148 La. 195, 86 So. 734; *Foss* v. *Richards* (1927), 126 Me. 419, 139 A. 313; *Texaco* v. *Vanden Bosche* (1966), 242 Md. 334, 219 A. 2d 80; *Joly* v. *Albert Larocque Lumber Ltd.* (1986), 397 Mass. 43, 489 N.E. 2d 698; *Anderson* v. *Great Lakes Dredge & Dock Co.* (1981), 411 Mich. 619, 309 N.W. 2d 539; *Johnson* v. *Chicago, Burlington & Quincy RR. Co.* (1954), 243 Minn. 58, 66 N.W. 2d 763; *Strickland* v. *Humble Oil & Refining Co.* (1943), 194 Miss. 194, 11 So. 2d 820; *Besse* v. *Missouri Pacific RR. Co.* (Mo. 1986), 721 S.W. 2d 740, certiorari denied (1987), 481 U.S. ___, 95 L. Ed. 2d 501; *Qualley* v. *Chrysler Credit Corp.* (1974), 191 Neb. 787, 217 N.W. 2d 914; *Payne* v. *Eighth Jud. Dist. Court* (1981), 97 Nev. 228, 626 P. 2d 1278; *Van Dam* v. *Smit* (1959), 101 N.H. 508, 148 A. 2d 289; *Gore* v. *United States Steel Corp.* (1954), 15 N.J. 301, 104 A. 2d 670, certiorari denied (1954), 348 U.S. 861; *McLam* v. *McLam* (1973), 85 N.M. 196, 510 P. 2d 914; *Groendyke Transport, Inc.* v. *Cook* (Okla. 1979), 594 P. 2d 369; *Horner* v. *Pleasant Creek Mining Corp.* (1940), 165 Ore. 683, 107 P. 2d 989, and *State, ex rel. Academy Press, Ltd.,* v. *Beckett* (1978), 282 Ore. 701, 722, 581 P. 2d 496, 506-507 (Linde, J., concurring); *Rini* v. *New York Central RR. Co.* (1968), 429 Pa. 235, 240 A. 2d 372; *Braten Apparel Corp.* v. *Bankers Trust Co.* (1979), 273 S.C. 663, 259 S.E. 2d 110; *Zurick* v. *Inman* (1968), 221 Tenn. 393, 426 S.W. 2d 767; *Forcum-Dean Co.* v. *Missouri Pac. RR. Co.* (Tex. Civ. App. 1960), 341 S.W. 2d 464, and *Flaiz* v. *Moore* (Tex. 1962), 359 S.W. 2d 872; *Kish* v. *Wright* (Utah 1977), 562 P. 2d 625; *Burrington* v. *Ashland Oil Co.* (1976), 134 Vt. 211, 356 A. 2d 506; and *Werner* v. *Werner* (1974), 84 Wash. 2d 360, 526 P. 2d 370.

Two states have incorporated the doctrine into a procedural rule: Indiana Rule of Trial Proc. TR. 4.4(C)(1971); see *McCracken* v. *Eli Lilly & Co.* (Ind. App. 1986), 494 N.E. 2d 1289; and North Dakota Civ. Proc. Rule 4(b)(5) (1983).

Finally, four states have adopted the doctrine by statute: Cal. Civ. Proc. Code Section 410.30 (1986), see *Archibald* v. *Cinerama Hotels* (1976), 15 Cal. 3d 853, 126 Cal. Rptr. 811, 544 P. 2d 947; New York Civ. Prac. Law and Rules 327 (1984), see *Islamic Republic of Iran* v. *Pahlavi* (1984), 62 N.Y. 2d 474, 478 N.Y. Supp. 2d 597, 467 N.E. 2d 245, certiorari denied (1985), 469 U.S. 1108; North Carolina Gen. Stat. Section 1-75.12 (1983); see *Motor Inn Mgmt., Inc.* v. *Irvin Fuller Develop. Co.* (1980), 46 N.C. App. 707, 266 S.E. 2d 368, review denied (1980), 301 N.C. 93, 273 S.E. 2d 299; and Wis. Stat. Ann. Sections 801.52 (1984) and 801.63 (1976), see *Littmann* v. *Littmann* (1973), 57 Wis. 2d 238, 203 N.W. 2d 901 (construing prior Wis. Stat. Ann. Section 262.19).

[4] But, see, *Islamic Republic of Iran, supra,* wherein the New York Court of Appeals dismissed on *forum non conveniens* grounds a suit brought by the government of Iran to recover the assets of the deposed Shah and Empress of Iran, despite the unavailability of an alternate forum due to political turmoil within Iran itself.

relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive. There may also be questions as to the enforceability of a judgment if one is obtained." *Gilbert, supra,* at 508. The *Gilbert* court noted that "the plaintiffs' choice of forum should rarely be disturbed," *id.,* particularly when the plaintiff has chosen his home forum. *Koster* v. *Lumbermens Mut. Cas. Co.* (1947), 330 U.S. 518, 524. However, in *Piper Aircraft Co.* v. *Reyno* (1981), 454 U.S. 235, 256, the court held: "Because the central purpose of any *forum non conveniens* inquiry is to ensure that the trial is convenient, a foreign plaintiff's choice deserves less deference."

Public interest factors to be considered include the administrative difficulties and delay to other litigants caused by congested court calendars, the imposition of jury duty upon the citizens of a community which has very little relation to the litigation, a local interest in having localized controversies decided at home, and the appropriateness of litigating a case in a forum familiar with the applicable law. *Gilbert, supra,* at 508-509. Additionally, the court in *Reyno, supra,* at 249-255, noted that the possibility of an unfavorable change in law upon dismissal should not, standing alone, bar such dismissal, provided the remedy in the alternate forum is not so clearly inadequate as to amount to no remedy at all. Essentially, "the ultimate inquiry is where trial will best serve the convenience of the parties and the ends of justice." *Koster, supra,* at 527.

Once a court has determined that the alternate forum is the more convenient, the common-law doctrine requires the court to dismiss the action. *Gilbert, supra,* at 512. The dismissal may be conditioned upon the refiling of the action in the alternate forum with defendant consenting to its jurisdiction. Other conditions may include, *inter alia,* defendant's consent to waive any statute of limitations defense, consent to comply with the discovery rules of the original forum, and consent to satisfy any judgment rendered against it in the alternate forum. See, *e.g., Dowling* v. *Richardson-Merrell, Inc.* (C.A. 6, 1984), 727 F. 2d 608; *In re Union Carbide Corp. Gas Plant Disaster at Bhopal, India* (S.D. N.Y. 1986), 634 F. Supp. 842, modified on appeal (C.A. 2, 1987), 809 F. 2d 195.

The final aspect of the common-law doctrine is the applicable standard of review upon appeal from a *forum non conveniens* dismissal. "The *forum non conveniens* determination is committed to the sound discretion of the trial court. It may be reversed only when there has been a clear abuse of discretion; where the court has considered all relevant public and private interest factors, and where its balancing of these factors is reasonable, its decision deserves substantial deference. *Gilbert,* 330 U.S., at 511-512; *Koster,* 330 U.S., at 531. * * *" *Reyno, supra,* at 257.

We now turn to the arguments presented by appellants and *amici curiae* urging us to reject the adoption of *forum non conveniens* as the law of Ohio. We find none of their arguments persuasive. In *Broderick* v. *Rosner* (1935), 294 U.S. 629, 643, the court expressly held that a state court "may in appropriate cases apply the doctrine of *forum non conveniens.*" See, also, *Missouri, ex rel. Southern Ry. Co.,* v. *Mayfield* (1950), 340 U.S. 1. We are to-

day, for the first time, faced with a most appropriate case in which to apply the doctrine, and thus join our many sister jurisdictions which have already done so.

## II

Appellants first argue that our adoption of the doctrine of *forum non conveniens* is inconsistent with prior decisions of this court which they read as specifically rejecting the doctrine as a matter of state policy, citing *State, ex rel. Consolidated Rail Corp.*, v. *Gorman* (1982), 70 Ohio St. 2d 274, 24 O.O. 3d 362, 436 N.E. 2d 1357; *Hughes* v. *Scaffide* (1978), 53 Ohio St. 2d 85, 7 O.O. 3d 175, 372 N.E. 2d 598; and *Mattone* v. *Argentina* (1931), 123 Ohio St. 393, 175 N.E. 603. We find appellants' reading of these decisions overly broad. While it is true that this court has not previously adopted the doctrine and applied it to a particular case, nor has the doctrine been embodied in any rule or statute in Ohio, *State, ex rel. Starner,* v. *DeHoff* (1985), 18 Ohio St. 3d 163, 18 OBR 219, 480 N.E. 2d 449; *State, ex rel. Consolidated Rail Corp.*, v. *Gorman, supra,* our prior decisions are clearly distinguishable and do not prevent the application of *forum non conveniens* in an appropriate case.

Our decision in *Mattone, supra,* has failed to weather the legal changes which have occurred in the fifty-seven years since it was handed down, and has lost its effectiveness. That case involved a transitory tort action between the residents of West Virginia, arising out of a single-car automobile accident which occurred in West Virginia. Defendant was properly and legally served in Jefferson County, Ohio, and the action was venued in that county pursuant to G.C. 11276, a general venue statute. This court held that where an Ohio court of common pleas had jurisdiction over a transitory tort action, and where service in Ohio was proper, the court was without discretionary authority to decline to entertain jurisdiction over such case. The court first distinguished the case from the decision in *Loftus* v. *Pennsylvania RR. Co.* (1923), 107 Ohio St. 352, 140 N.E. 94, in which a limiting venue statute (G.C. 11273) was upheld and applied, the court holding that where transitory jurisdiction was proper but venue in Ohio was not due to the limiting statute, a trial court is not obligated by the Privileges and Immunities Clause of the United States Constitution[5] to entertain the suit. See, *e.g.,* Blair, The Doctrine of Forum Non Conveniens in Anglo-American Law (1929), 29 Colum. L. Rev. 1, at 12-18. In differentiating *Loftus* from the case at hand, the *Mattone* court determined that as service was proper therein under the general venue statute, and no exception applied, a discretionary dismissal of the nonresident's action would in effect violate the Privileges and Immunities Clause, and implicitly the access-to-courts provision of the Ohio Constitution.[6]

Of course, the Privileges and Immunities Clause does not apply to nonresident aliens like appellants here.

---

[5] Section 2, Article IV of the United States Constitution provides, in part:

"The citizens of each State shall be entitled to all privileges and immunities of citizens in the several States."

[6] Section 16, Article I of the Ohio Constitution provides, in part:

"All courts shall be open, and every person, for an injury done him in his land, goods, person, or reputation, shall have remedy by due course of law, and shall have justice administered without denial or delay. * * *"

*Zobel* v. *Williams* (1982), 457 U.S. 55, 73-74, fn. 3 (O'Connor, J., concurring). In fact, "[n]o alien has a constitutional right to sue in United States courts." *Heine* v. *New York Life Ins. Co.* (C.A. 9, 1931), 50 F. 2d 382, 386, citing *Kline* v. *Burke Constr. Co.* (1922), 260 U.S. 226. In addition, the United States Supreme Court later held that the doctrine of *forum non conveniens*, when applied to nonresident United States citizens, does not offend the Privileges and Immunities Clause. *Missouri, ex rel. Southern Ry. Co.,* v. *Mayfield, supra.*

"[I]f a State chooses to '[prefer] residents in access to often overcrowded Courts' and to deny such access to all non-residents, whether its own citizens or those of other States, it is a choice within its own control." *Id.* at 4.

Even earlier, the Supreme Court had noted, "[t]here are manifest reasons for preferring residents in access to often overcrowded Courts, both in convenience and in the fact that broadly speaking it is they who pay for maintaining the Courts concerned." *Douglas* v. *New York, New Haven & H. RR. Co.* (1929), 279 U.S. 377, 387. It was this change in law which prompted the Supreme Courts of Minnesota and Nebraska, states to which the *Mattone* court turned for guidance, to overrule their earlier decisions and adopt the doctrine of *forum non conveniens*. See fn. 3, *supra.* Given this change in the law, as well as the repeal of G.C. 11276 (R.C. 2307.38, effective July 1, 1971), and the adoption by this court of the Ohio Rules of Civil Procedure, the *Mattone* decision does not control our decision today.

In *Hughes* v. *Scaffide, supra,* this court reversed a so-called *forum non conveniens* dismissal of a petition for writ of habeas corpus originally filed in the court of appeals. Our reversal was based on specific language in Sections 2 and 3, Article IV of the Ohio Constitution, particularly Section 2(B)(3), which precludes a court of appeals or the Supreme Court from refusing to exercise its original jurisdiction in habeas corpus.[7] Our Constitution provides no similar explicit constraint on the discretion of courts of common pleas. Section 4(B), Article IV provides:

"The courts of common pleas and divisions thereof shall have such original jurisdiction over all justiciable matters and such powers of review of proceedings of administrative officers and agencies as may be provided by law."

This general provision is similar to the provisions in former Sections 2 and 6 of Article IV pertaining to appellate (circuit) courts which, *prior to* the 1913 amendment adding what is now Section 2(B)(3), granted such appellate courts the discretion to decline to exercise their original jurisdiction over extraordinary writs. *Hughes, supra,* at 89; *State, ex rel. Werden,* v. *Williams* (1875), 26 Ohio St. 170; *Ex parte Shean* (1875), 25 Ohio St. 440; *Ex parte Shaw* (1857), 7 Ohio St. 81. As a further distinguishing factor, all the parties involved were residents of the same Ohio county, and were not seeking a dismissal of their case and refiling outside the state, nor were they even seeking a transfer of their case to another Ohio county (which, as we discuss below, is not permitted on *forum non conveniens* grounds but only pursuant to Civ. R. 3[C]). Rather, the court of appeals in

---

[7] Section 2(B)(3), Article IV of the Ohio Constitution provides:

"No law shall be passed or rule made whereby any person shall be prevented from invoking the original jurisdiction of the supreme court."

*Hughes* felt the juvenile court was the more appropriate court for the habeas action and elected not to entertain jurisdiction itself. The *Hughes* decision has no application to the facts presented *sub judice.*

Finally, appellants argue our decision in *State, ex rel. Consolidated Rail Corp.,* v. *Gorman, supra,* also demonstrates a rejection of *forum non conveniens.* This argument misconstrues the procedural posture of the case, which was an appeal from the denial of a writ of mandamus. In affirming, we merely noted that since the doctrine had theretofore not been adopted in Ohio, relator could show no clear legal duty on the part of the common pleas judge to apply it in relator's Federal Employers' Liability Act action. The decision merely states the obvious and is not a commentary on the merits of the doctrine nor its viability in future cases.

The argument proposed by *amici curiae* is similar to that discussed above. However, they argue that this court specifically rejected the doctrine of *forum non conveniens* by its adoption of Civ. R. 3 in its current form. Their claim is only partially correct.

Section 5(B), Article IV of the Ohio Constitution, adopted May 7, 1968, as amended, provides:

"The supreme court shall prescribe rules governing practice and procedure in all courts of the state, which rules shall not abridge, enlarge, or modify any substantive right. Proposed rules shall be filed by the court, not later than the fifteenth day of January, with the clerk of each house of the general assembly during a regular session thereof, and amendments to any such proposed rules may be so filed not later than the first day of May in that session. Such rules shall take effect on the following first day of July, unless prior to such day the general assembly adopts a concurrent resolution of disapproval. *All laws in conflict with such rules shall be of no further force or effect after such rules have taken effect.* * * *" (Emphasis added.) See *Morrison* v. *Steiner* (1972), 32 Ohio St. 2d 86, 61 O.O. 2d 335, 290 N.E. 2d 841.

In early 1969, the Rules Advisory Committee submitted its draft of the proposed rules to this court. The venue rule in this draft was designed to replace the inconsistent and widely scattered venue statutes in place at the time, and was based in large part on the statutes proposed by Professor Richard S. Miller, in his article, Implementing Current Theories of Jurisdiction, Venue and Services of Process — Proposals for Revision of the Ohio Statutes (1968), 29 Ohio St. L. J. 116, 152-155. See 4 Anderson's Ohio Civil Practice (1987) 116, Section 149.01. This draft included language specifically adopting *forum non conveniens* provisions for both intra- and interstate change of venue.[8]

---

[8] Pertinent provisions of the draft included the following:

"[3](a) * * *

"(b) Venue: where proper; *Convenient Forum.*

"Where practicable, every action shall be commenced and tried in a forum *convenient to the parties and witnesses,* where justice can be administered without prejudice and delay. In any action, any one or more of the following counties shall be presumed to be *convenient forums* for the purpose of establishing proper venue:

"* * *

"(c) Change of Venue.

"(1) When an action has been commenced in a county other than one enumerated in Rule 3(b), upon timely service of a pleading or motion to dismiss allowed by Rule 12(b)(3), or upon its own motion, the court shall transfer the action to a county presumed to be *convenient* in Rule 3(b) un-

This court, in the final version of the rules submitted to the General Assembly for its approval, removed all reference of "convenient forum" from Civ. R. 3, substituting "proper venue" in subdivisions (B) and (C), and "proper forum" in subdivisions (D) (former subsection [e]) and (E) (former subsection [g]). The commentators have indicated that the reason for the change was a recognition that *transfer* of a case from one proper venue to another proper venue *within* the state

for means of convenience is unnecessary in a geographically small state such as Ohio, and that any inconvenience to witnesses in such a situation could be remedied by the use of depositions. Anderson's Ohio Civil Practice, *supra*, at 116; McCormac, Ohio Civil Rules Practice (1970), Section 2.19 (both of which refer to the flood of litigation over district to district transfer within the federal system pursuant to Section 1404[a], Title 28, U.S. Code).[9] It must be remembered that

---

less plaintiff establishes that the original forum in which the action was commenced is a *more convenient* county than any county presumed to be convenient.

"(2) Upon motion of any party or upon its own motion the court may transfer any civil action to any other convenient forum within the state:

"(a) When it appears that a fair and impartial trial cannot be had in the county where the suit is pending; or

"(b) For *convenience of parties and witnesses,* in the interest of justice without prejudice or delay.

"* * *

"(e) Venue: No *Convenient Forum* in Ohio.

"In any action brought in a court of this state, if the court, upon motion of any party or upon its own motion, determines: (1) that the county in which the action is brought is not a *convenient* forum; (2) that there is no other *convenient* place for trial within this state; and (3) that there exists a *convenient* place for trial in another jurisdiction outside this state, the court shall stay the action upon condition that defendant consents to the jurisdiction and waives venue and the application of the statute of limitations to the action in that forum in another jurisdiction which the court deems to be the *most convenient* forum. If the defendant agrees to the conditions the court shall not dismiss the action, but it shall be stayed until the court receives notice by affidavit that plaintiff has recommenced the action in the *convenient* forum and defendant has complied with the conditions aforesaid, or that plaintiff has not recommenced the action in the

*convenient* forum within 60 days after the effective date of the order staying the original action. If the defendant does not agree to or comply with the conditions aforesaid the court shall hear the action.

"If the court determines that there does not exist a *convenient* forum in another jurisdiction, it may hear the action or dismiss, as the interests of justice require. * * *" (Emphasis added.) Draft Ohio Rules of Civil Procedure (1969), 42 Ohio Bar 223, 224-226. In addition, subsection (f) of Rule 3 included a non-exhaustive list of twelve factors the court would consider in determining the interest of justice and convenience of the parties.

[9] In the federal system, *forum non conveniens* remains viable in cases, like the case at bar, involving international forums to which the *transfer* statute is without effect. *Piper Aircraft Co.* v. *Reyno, supra.* In *Norwood* v. *Kirkpatrick* (1955), 349 U.S. 29, 31, the Supreme Court clarified the two devices:

" 'The *forum non conveniens* doctrine is quite different from Section 1404(a). That doctrine involves the dismissal of a case because the forum chosen by the plaintiff is so completely inappropriate and inconvenient that it is better to stop the litigation in the place where brought and let it start all over again somewhere else. * * * [The provisions of Section 1404(a)] should be considered for what they say, not with preconceived limitations derived from the *forum non conveniens* doctrine.' "

See, also, *Pain* v. *United Technologies Corp.* (C.A. D.C. 1980), 637 F. 2d 775.

*transfer* of an action within the Ohio judicial system involves considerations wholly separate from a conditional dismissal and refiling outside Ohio. Thus, Civ. R. 3(C) now provides for a *transfer* of a properly venued action, Civ. R. 3(B), to an adjoining county in Ohio (whether venue is "proper" there or not) only "when it appears that a fair and impartial trial cannot be had in the county in which the suit is pending." We are not faced with such a situation herein.

However, in Civ. R. 3(D), the word "proper" was substituted for "convenience" merely to provide consistency throughout the rule. As a result, this subsection only applies when venue in Ohio is not proper under any of the options of subsection (B). We have found no Ohio case in which Civ. R. 3(D) has been applied, undoubtedly because it can only be applied in the extremely rare pure transitory action where both plaintiff and defendant are non-Ohio residents and the cause of action arose outside this state, but the defendant is "caught" and served while momentarily in Ohio. Anderson's Ohio Civil Practice, *supra,* at 143-145, Section 149.18; see, also, *Price* v. *Wheeling Dollar Savings & Trust Co.* (1983), 9 Ohio App. 3d 315, 9 OBR 581, 460 N.E. 2d 264; *Penrod* v. *Baltimore & Ohio RR. Co.* (1979), 64 Ohio App. 2d 216, 18 O.O. 3d 164, 412 N.E. 2d 949; *Singleton* v. *Denny's, Inc.* (1987), 36 Ohio App. 3d 225, 522 N.E. 2d 1097; *McWilliams* v. *U-Haul International, Inc.* (Nov. 20, 1986), Clark App. No. 2254, unreported; *Gallimore* v. *Arcadia Natl. Life Ins. Co.* (May 12, 1986), Miami App. No. 85CA25, unreported.

Civ. R. 3 does not expressly preclude the application of the common-law doctrine of *forum non conveniens* in interstate or international situations not covered by subsection (D), whether or not venue is "proper" in Ohio. Additionally, the Civil Rules, like *forum non conveniens,* "shall be construed and applied to effect just results by eliminating delay, unnecessary expense and all other impediments to the expeditious administration of justice." Civ. R. 1(B). Therefore, since neither the commentators nor the parties have provided evidence of a contrary intent on the part of the rule revisionists, we hold that the application of *forum non conveniens* in the case *sub judice* was within the trial court's inherent power and does not conflict with Civ. R. 3.

Appellants' last argument against our recognition of the doctrine of *forum non conveniens* as the law of Ohio is that to do so would violate the access-to-courts provision of the Ohio Constitution, Section 16, Article I. See, *supra,* fn. 6. We disagree. The right of "every person" to bring an action in an Ohio court is not an unlimited, absolute guarantee that every cognizable claim filed in a court of general jurisdiction will be litigated to a final conclusion in such court. Litigants may find their claims barred by a reasonable statute of limitations, stayed by lawful injunction, dismissed by summary judgment and tempered by any number of other devices consonant with due process or "due course of law." The doctrine of *forum non conveniens* is one such device, which, when applied according to the case-specific guidelines set forth in *Gilbert* and its progeny, fulfills rather than denies the constitutional guarantee that *every* person "shall have justice administered without denial or delay."

### III

Our final task is to determine whether the trial court below properly employed the doctrine of *forum non conveniens,* considering all the relevant private and public interest factors and the weight given to each. We will not

independently assess and reweigh each factor, as our review is limited to the narrow determination of whether the trial court abused its discretion in ordering a conditional dismissal herein. See *Reyno, supra.* An abuse of discretion implies " 'not merely error of judgment, but perversity of will, passion, prejudice, partiality, or moral delinquency.' " *State, ex rel. Commercial Lovelace Motor Freight, Inc.,* v. *Lancaster* (1986), 22 Ohio St. 3d 191, 193, 22 OBR 275, 277, 489 N.E. 2d 288, 290, quoting *State, ex rel. Shafer,* v. *Ohio Turnpike Comm.* (1953), 159 Ohio St. 581, 590-591, 50 O.O. 465, 469, 113 N.E. 2d 14, 19.

The trial court considered the following private interest factors: if suit were maintained in Ohio, the foreign plaintiffs would benefit from this country's practice of allowing counsel to operate on a contingent fee basis, a practice whose absence in Great Britain makes it difficult for many plaintiffs to bring suit in that nation; in Ohio, plaintiffs are not burdened by paying their opponent's attorney fees should they lose, as they would be in Great Britain; in Ohio, unlike Great Britain, plaintiffs would be entitled to a jury trial and could utilize depositions rather than live witnesses at trial, would likely be entitled to punitive damages, and would benefit from far more liberal law regarding strict products liability; and the documents and witnesses relating to the initial development of Bendectin in defendant's Cincinnati laboratories are located in this state, which to that extent would benefit both parties. However, plaintiffs would have to travel at great expense to Cincinnati, as would the several witnesses located in Great Britain, also at plaintiffs' expense. These foreign witnesses, relating to the personal and family medical history of the plaintiffs, and relating to the prepara-

tion, testing and distribution of Debendox in Great Britain, are located throughout Great Britain. Finally, the Ohio courts would be unfamiliar with applying British law, which would inure to neither party's benefit.

The public factors considered were the burden on Ohio courts in applying foreign law in a difficult case; the lack of subpoena power to compel cooperation of foreign witnesses; the "near certainty" that allowing this suit would result in the filing in Cincinnati of one thousand or more similar Debendox cases from various countries; and the tremendous burden upon the jury system of Hamilton County should such a flood of litigation occur, coupled with the equally tremendous burden on the limited resources of the Ohio judiciary and the potential denial to our own citizens of access to Ohio courts.

The court then balanced these considerations in light of the fact that Debendox was manufactured almost exclusively in Great Britain by a British corporation; its contents were somewhat different from the drug developed by defendant in the United States; Debendox was tested and licensed under British law, promoted and sold by British firms to citizens and residents of Great Britain; the injuries all occurred there; and the information on the initial development and testing of Bendectin in this country had been discovered in a virtually identical federal case, *In re Richardson-Merrell, Inc.* (S.D. Ohio 1982), 545 F. Supp. 1130, affirmed and modified in *Dowling* v. *Richardson-Merrell, Inc.* (C.A. 6, 1984), 727 F. 2d 608, and was still available to the plaintiffs herein. The court determined the balance weighed in favor of defendant, as "Great Britain has the overwhelmingly greater interest in this matter." The court of appeals found no abuse of discretion in this determination.

We are compelled to agree. We first reiterate that a change in law from one forum to another is not a determinative factor upon which to deny a dismissal herein. *Reyno, supra.* A viable alternative forum exists in the United Kingdom, and the possibility that these foreign appellants' recoveries may be smaller in the United Kingdom is not of paramount concern.[10] Second, appellants argue that we should protect our interest in regulating drug testing and promotion occurring in this state by subjecting appellee to the deterring effect of strict products liability litigation here. We cite with approval the response to a similar argument offered in *Reyno, supra,* at 260-261: "[T]he incremental deterrence that would be gained if this trial were held in an American court is likely to be insignificant." The trial court below did not abuse its discretion in granting a conditional dismissal of the instant action, based on the doctrine of *forum non conveniens.*

Accordingly, the judgment of the court of appeals is affirmed.

*Judgment affirmed.*

MOYER, C.J., LOCHER, WRIGHT and H. BROWN, JJ., concur.

SWEENEY and DOUGLAS, JJ., dissent.

DOUGLAS, J., dissenting. While the better practice may be that the doctrine of *forum non conveniens* should be adopted as the law of this state, I disagree both with the manner in which it was adopted herein and in its application to the instant cause.

*Forum non conveniens* is a doctrine of procedure, not substance, applying *only* in situations where an action is *properly* before a court which possesses both jurisdiction and venue. The method for establishing procedural rules in Ohio is set forth in Section 5(B), Article IV of the Ohio Constitution. This provision provides in part that "[t]he supreme court shall prescribe rules governing practice and procedure in all courts of the state * * *." Thus, the doctrine of *forum non conveniens* can be adopted either by constitutional amendment, by a legislative enactment not inconsistent with the rules of practice and procedure, or

---

[10] The British courts are well aware of the economic differences between the American and British judicial systems, and the incumbent forum shopping such differences engender. We note with interest the following comments of Lord Denning MR of the English Court of Appeal, Civil Division, opening his decision which granted an American multinational drug corporation an injunction against a British doctor, enjoining him from prosecuting a breach of contract action brought in Pennsylvania. The doctor's licensing contract was with the American corporation's English subsidiary. "As a moth is drawn to the light, so is a litigant drawn to the United States. If he can only get his case into their courts, he stands to win a fortune. At no cost to himself, and at no risk of having to pay anything to the other side. The lawyers there will conduct the case 'on spec' as we say, or on a 'contingency fee' as they say. The lawyers will charge the litigant nothing for their services but instead they will take 40% of the damages, if they win the case in court, or out of court on a settlement. If they lose, the litigant will have nothing to pay to the other side. The courts in the United States have no such costs deterrent as we have. There is also in the United States a right to trial by jury. These are prone to award fabulous damages. They are notoriously sympathetic and know that the lawyers will take their 40% before the plaintiff gets anything. All this means that the defendant can be readily forced into a settlement. The plaintiff holds all the cards." *Smith Kline & French Laboratories, Ltd.* v. *Bloch* (1983), 2 All E.R. 72, 74.

by a rule of practice and procedure promulgated by this court and approved by the Ohio Legislature. Since neither the Ohio Constitution nor the Ohio Revised Code currently embodies the doctrine, if *forum non conveniens* is to be considered available in Ohio, it must be contained within the scope and content of the currently existing Rules of Civil Procedure adopted by this court. Yet, Ohio's Rules of Civil Procedure, as they currently exist, provide for no such practice. Either an action is *proper* or it is not. Convenience is not an issue.

Civ. R. 3 sets forth the procedure for commencing an action and determining proper venue in Ohio. This rule additionally provides the appropriate procedure to be utilized when there is no *proper* forum in Ohio. While at first glance this section may appear to adopt the doctrine of *forum non conveniens,* closer scrutiny reveals that such is not the case.

As shown by the majority, the initial draft version of Civ. R. 3(D), submitted to this court by the Rules Advisory Committee of the Ohio Judicial Conference, would have adopted the doctrine of *forum non conveniens.* In fact, the thrust of the entire Rule 3, as proposed, was directed towards ensuring that complaints were lodged in convenient forums in both interstate and intrastate actions. Proposed Civ. R. 3(e) and (f), 42 Ohio Bar, at 224-228. However, when this court submitted its proposed rules to the General Assembly for approval, Civ. R. 3, in particular Civ. R. 3(D), had been substantially revised and retitled to *eliminate* the "convenient forum" concept, replacing it with the currently utilized "proper forum" concept. 42 Ohio Bar, at 1202-1205. The two concepts are *not* coextensive. To now say that "proper forum" was substituted for "convenient forum" "'* * * merely to provide

consistency throughout the rule" flies in the face of this court's action in 1969 and contorts the express language approved by both this court *and* the General Assembly.

Further, since 1970, when Ohio's Rules of Civil Procedure were adopted, this court has, on three occasions, stated that the doctrine of *forum non conveniens* is not embodied in any rule in Ohio. *Hughes* v. *Scaffide* (1978), 53 Ohio St. 2d 85, 7 O.O. 3d 175, 372 N.E. 2d 598; *State, ex rel. Consolidated Rail Corp.,* v. *Gorman* (1982), 70 Ohio St. 2d 274, 24 O.O. 3d 362, 436 N.E. 2d 1357; and *State, ex rel. Starner,* v. *DeHoff* (1985), 18 Ohio St. 3d 163, 18 OBR 219, 480 N.E. 2d 449. To now discover a new interpretation for Civ. R. 3(D) is somewhat incongruous. Additionally, the majority has, albeit weakly, attempted to distinguish this court's most definitive statement to date concerning the doctrine of *forum non conveniens, Mattone* v. *Argentina* (1931), 123 Ohio St. 393, 175 N.E. 603, solely on the basis of its *age* and the passage of the Civil Rules in Ohio. However, the general venue statute relied upon in *Mattone,* G.C. 11276, is neither in conflict with, nor narrower in scope than, Civ. R. 3, the current venue authority. Furthermore, as shown *supra,* the history of Civ. R. 3 acts not to erode the comments of the court in *Mattone,* but to support them. In *Mattone* at 397-398, 175 N.E. at 605, this court stated:

"The courts of common pleas of this state are given such jurisdiction as is provided by law, to wit, by the acts of the Legislature.

"That body having specifically given the court of common pleas jurisdiction in the character of action presented in this case, as set forth in Section 11276, General Code, it follows that the rule of discretionary power of the courts to entertain jurisdiction, ap-

plicable in other states, does not apply here.

"* * * In some states this rule of discretionary power is recognized, but the statutory and constitutional provisions of this state are such that we cannot adopt the rule."

Later, the *Mattone* court concluded:

"It is urged that the requiring of the courts of this state to take jurisdiction in a case such as is presented by this record would tend toward a great burden upon the courts of this state. However, this is a *legislative problem and is not one for the courts.* We deem the matter entirely controlled by the statute above indicated." (Emphasis added.) *Id.* at 400, 175 N.E. at 606.

Accordingly, to adopt the doctrine at issue herein, I believe that a condition precedent to that adoption must, at a minimum, be an amendment to Civ. R. 3.

Moreover, even were this court able to adopt the doctrine in the manner in which it has done so, the instant cause clearly is not an appropriate case for the application of *forum non conveniens.* The factors present herein simply weigh in favor of appellants' choice of forums — Ohio.

The cause now before us is not a transitory action in which neither party is a resident of Ohio and the cause of action did not arise in Ohio. Instead, in the case at bar, appellee has its principal place of business in Ohio. It is alleged appellee did the testing for the original drug in Ohio and that appellee did sell the drug in the United States. Accordingly, with regard to appellee, appellants' choice of Ohio as its forum for litigation is not only proper but also convenient.

Further, it is most interesting to note that former apostles of *stare decisis* have suddenly seemed to not only abandon their prior blind opposition to applying modern legal doctrines in order to bring Ohio jurisprudence into the twentieth century, but have also more than rendered the doctrine a relic — having today implicitly declared the doctrine to be dead!

No matter what judicial footwork and machinations are used by the majority to *"distinguish"* this court's prior and recent holdings on the issue — the fact remains that this court has *twice* stated "* * * that although the states were free to accept or reject the doctrine of *forum non conveniens,* Ohio * * * [has] neither judicially adopted the doctrine, nor embodied it in any rule or statute." *State, ex rel. Starner,* v. *DeHoff, supra,* at 164, 18 OBR at 220, 480 N.E. 2d at 451; and *State, ex rel. Consolidated Rail Corp.,* v. *Gorman, supra,* at 275, 24 O.O. 3d at 362, 436 N.E. 2d at 1358. Add to this the clear history that it was the specific intention of this court and the legislature *not* to adopt the doctrine and one must come to the inevitable conclusion that those of us who are charged with being too judicially progressive would now seem to have free rein as we continue to move the law of Ohio into the twentieth century in such fields as medical malpractice, products liability, workers' compensation, wrongful discharge, landlord-tenant, and spousal and parental immunity.

Finally, it is a sad day for Ohio when the highest court in this state holds that *our* Constitution, specifically Section 16, Article I, which provides for our courts to be open to "every person," does *not* include aliens. This is akin to the outrageous and outmoded holdings of yesteryear when blacks and women were not "persons" under the law. Therefore, I would reverse the judgment of the court of appeals and permit appellants' litigation to continue.

SWEENEY, J., concurs in the foregoing dissenting opinion.