OPINION
{¶ 1} J. Griffin Ricker, plaintiff-appellant, appeals from a judgment of the Franklin County Court of Common Pleas, in which the trial court granted the motion to dismiss for lack of personal jurisdiction filed by Bobcat of Orlando, Inc. ("Bobcat"), defendantappellee.
 {¶ 2} Bobcat is a Florida corporation with a principal place of business in Orlando, Florida. Ricker owns an insurance consulting business with a principal place of business in Hilliard, Ohio. Ricker alleges he gave a presentation in Columbus, Ohio, to various Bobcat dealers, including appellee, in 2001. Ricker further alleges that, after such presentation, he met in person with the president of Bobcat, Richard Kingsland, in Columbus to discuss Ricker obtaining insurance for Bobcat and his consulting fee. Ricker alleges that he told Kingsland his fee was $14,000, and that such amount was due on an annual basis upon renewal of any insurance policy Ricker arranged for Bobcat. However, Bobcat contends that there was no conference for Bobcat dealers in Columbus in 2001, there were no in-person meetings between the parties in Ohio, and Kingsland was never in Ohio during this period. Bobcat maintains that Ricker contacted it several times in Florida to persuade it to use his services to switch insurance providers. Nevertheless, various communications, including faxes, letters, and telephone calls occurred between Bobcat in Orlando and Ricker in Columbus. Ricker alleges that he then traveled to Orlando at the request of Kingsland, with Ricker paying his own expenses. While Ricker was in Orlando, Bobcat entered into an insurance contract with one of the insurers Ricker located, Universal Underwriter's Group ("Universal"). Ricker billed Bobcat $14,000 for his fee. Bobcat refused to pay the entire fee in one lump sum and, in January 2002, the parties agreed that Bobcat could pay Ricker monthly. In late 2002, Bobcat sent Ricker information regarding renewal of the insurance, and Bobcat renewed its policy with Universal. On February 6, 2003, Ricker billed Bobcat $14,000 for his renewal fee. Bobcat refused to pay the renewal fee.
 {¶ 3} On November 7, 2003, Ricker filed a complaint against Bobcat in the Franklin County Court of Common Pleas. Bobcat filed a motion to dismiss for lack of personal jurisdiction, pursuant to Civ.R. 12(B), or, in the alternative, a motion to dismiss on the grounds of forum non conveniens. On April 14, 2004, the trial court granted Bobcat's motion to dismiss for lack of personal jurisdiction and found its motion to dismiss based upon forum non conveniens moot. Ricker appeals the judgment of the trial court, asserting the following assignment of error:
The trial court erred in granting defendant's motion to dismiss for lack of personal jurisdiction[.]
 {¶ 4} Ricker argues in his assignment of error that the trial court erred in granting Bobcat's motion to dismiss for lack of personal jurisdiction. The trial court did not hold an evidentiary hearing on Bobcat's motion to dismiss. If a trial court determines its jurisdiction without an evidentiary hearing, it must view allegations in the pleadings and documentary evidence in a light most favorable to the non-moving party, resolving all reasonable competing inferences in favor of the non-moving party. KB Circuits, Inc. v. BECS Tech., Inc. (Jan. 18, 2001), Franklin App. No. 00AP-621. Further, where the court does not hold an evidentiary hearing, "the plaintiff need only make a prima facie showing of jurisdiction to withstand the motion to dismiss." Giachetti v. Holmes (1984),14 Ohio App.3d 306, 307; KB Circuits, supra. This court's review of a trial court's decision granting a Civ.R. 12(B)(2) motion is de novo. Id.
 {¶ 5} To determine whether an Ohio court has personal jurisdiction over a nonresident defendant, the court must determine: (1) whether R.C. 2307.382 and Civ.R. 4.3 confer personal jurisdiction, and, if so, (2) whether granting personal jurisdiction would deprive the defendant of the right of due process of law under the Fourteenth Amendment to the United States Constitution. U.S. Sprint Communications Co. Ltd.Partnership v. Mr. K's Foods, Inc. (1994), 68 Ohio St.3d 181,183-184.
 {¶ 6} With regard to the first prong of the U.S. Sprint
test, R.C. 2307.382(A)(1) provides:
(A) A court may exercise personal jurisdiction over a person who acts directly or by an agent, as to a cause of action arising from the person's;
(1) Transacting any business in this state[.]
 {¶ 7} Civ.R. 4.3(A)(1) provides:
(A) When service permitted
Service of process may be made outside of this state, as provided in this rule, in any action in this state, upon a person [including a corporation] who, at the time of the service of process, is a nonresident of this state or is a resident of this state who is absent from this state * * * who, acting directly or by an agent, has caused an event to occur out of which the claim that is the subject of the complaint arose, from the person's:
(1) Transacting any business in this state[.]
 {¶ 8} The language "transacting any business" in both the statute and the rule is broad. Kentucky Oaks Mall Co. v.Mitchell's Formal Wear, Inc. (1990), 53 Ohio St.3d 73, 75. The term "transact" as used in R.C. 2307 and Civ.R. 4.3 encompasses "to carry on business" and "to have dealings," and is broader than the word "contract." Goldstein v. Christiansen (1994),70 Ohio St.3d 232, 236, citing Kentucky Oaks Mall, supra. "With no better guideline than the bare wording of the statute to establish whether a nonresident is transacting business in Ohio, the court must, therefore, rely on a case-by-case determination."U.S. Sprint, supra, at 185.
 {¶ 9} In support of its motion to dismiss, Bobcat presented the joint affidavit of Kingsland and Gary Moses, the vice-president of Bobcat. In the affidavit, they asserted that Bobcat is a Florida corporation with a principal place of business in Florida; all Bobcat sales are limited to Florida; Bobcat has no employees in Ohio; Bobcat owns no property in Ohio; Bobcat transacts and solicits no business in Ohio; Ricker traveled to Florida at his own expense and by his own decision to make his insurance proposal to Bobcat; Universal is a Florida company; the insurance contracts were signed in Florida; all of the insured property is located in Florida; Bobcat paid Ricker's fee pursuant to an oral agreement agreed to in Florida; and Bobcat did not utilize Ricker in renewing its insurance with Universal in 2003 and 2004.
 {¶ 10} In support of his memorandum contra Bobcat's motion to dismiss, Ricker presented his own affidavit. Ricker averred he owns an insurance consulting business with its principal place of business in Hilliard, Ohio; Bobcat transacts business in Ohio by buying and trading equipment with other Bobcat dealers in Ohio; Universal is a Kansas company with offices and branches in many other states; he did not first solicit or initiate contact with Bobcat; Kingsland contacted him in 2001, while in Ohio; he met with Kingsland in Columbus, Ohio, and explained his consulting business; at the initial meeting in Columbus, he explained his fees to Kingsland and that the fee was payable annually upon renewal of the insurance with any insurer he located for Bobcat; at the initial meeting in Columbus, Kingsland asked him to gather information to provide him with an insurance quote; through his efforts in Ohio, he obtained insurance for Bobcat with Universal; the services provided were pursuant to an oral agreement obtained by Kingsland in Ohio; he and Bobcat exchanged at least 14 fax and mail communications between Ohio and Florida during the time of the relationship, in which was discussed the parties' agreement, billing, and terms of the insurance, among other things; he paid for his own airline ticket to Florida and his hotel room, meals, and phone calls while in Florida in order to provide Bobcat with the insurance program; and Bobcat sent monthly checks to his office in Ohio.
 {¶ 11} Bobcat submitted a supplemental joint affidavit of Kingsland and Moses. In the affidavit, Kingsland and Moses again averred that Bobcat does not transact any business in Ohio due to contractual limitations; Ricker's averment that Bobcat conducts business by selling and trading with other Bobcat dealers in Ohio is incorrect; neither of them ever met with Ricker in Columbus and did not even travel to Columbus in 2001; and their only face-to-face meeting with Ricker was in Florida at the offices of Bobcat.
 {¶ 12} After viewing the pleadings and documentary evidence in a light most favorable to Ricker, we find that sufficient facts were presented to demonstrate that Bobcat "transacted business" in Ohio pursuant to the requirements of R.C.2307.382(A)(1) and Civ.R. 4.3. Solicitation of business by a foreign corporation may be a relevant factor in determining whether the company was transacting business in Ohio for purposes of personal jurisdiction. See U.S. Sprint, supra, at 185, citing Wainscott v. St. Louis-San Francisco Ry. Co. (1976),47 Ohio St.2d 133. Here, the parties dispute in their affidavits whether it was Bobcat or Ricker who initiated the parties' business dealings. Bobcat contends that Ricker traveled to Florida by his own decision to make his insurance proposal to Bobcat, neither Kingsland nor Moses ever met with Ricker in Columbus, neither traveled to Columbus in 2001, and their only face-to-face meeting with Ricker was in Florida at the offices of Bobcat. Ricker contends that he did not first solicit or initiate contact with Bobcat, and Kingsland contacted him in 2001, while in Ohio, at which time they met in Columbus to discuss Bobcat's insurance needs. As we must view allegations in the pleadings and documentary evidence in a light most favorable to the non-moving party and resolve all reasonable competing inferences in favor of the nonmoving party, KB Circuits, supra, we are required to construe Ricker's averments as true. Thus, we must suppose, for purposes of determining Bobcat's motion to dismiss, that Bobcat initiated the parties' dealings in Ohio.
 {¶ 13} However, who initiated the business dealings is not in itself determinative as to whether the nonresident defendants transacted business in Ohio for purposes of personal jurisdiction. See U.S. Sprint, supra, at 185. We must also look at other evidence to determine in which jurisdiction the parties carried out their dealings, discussions, meetings, and communications. Ricker submitted undisputed evidence with his affidavit showing that, from at least July 26, 2001 to at least April 10, 2003, the parties communicated via faxes and U.S. mail. Ricker attached numerous documents evincing that Bobcat sent correspondences to Ricker's Ohio office. The correspondences also imply that representatives from Bobcat spoke to Ricker in Ohio by telephone during this period. Further, Ricker averred that Kingsland and he met in Columbus and discussed Ricker's business, what services he could perform for Bobcat, and his fees. Ricker also claims the oral contract was formed in Ohio. Even if this initial contact did not result in a contract but involved only negotiations, the provisions of the statute and rule relating to "transacting business" are broadly worded and permit a court to exercise jurisdiction in cases involving actual contracts as well as cases involving only negotiations. See Kentucky Oaks Mall,
supra, at 75. It is undisputed that Bobcat also sent monthly payments to Ricker's Ohio office. See Hammill Mfg. Co. v.Quality Rubber Prod., Inc. (1992), 82 Ohio App.3d 369 (a nonresident corporate defendant transacted business in Ohio when it initiated negotiations that led to a contract and through a course of dealing became obligated to make ongoing payments to an Ohio corporation for the life of the contract); see, also,Kentucky Oaks Mall, supra, at 76. Construing this evidence in a light favorable to Ricker and applying a broad construction to the phrase "transacting any business," we find that Bobcat "carried on business" and "had dealings" with Ricker, such that Bobcat transacted business in Ohio within the meaning of R.C.2307.382(A)(1) and Civ.R. 4.3. Therefore, Ricker made a prima facie showing of the first prong of the U.S. Sprint test.
 {¶ 14} As Ricker has met the first prong of the test in U.S.Sprint, we must next address whether granting personal jurisdiction would deprive the defendant of due process of law under the Fourteenth Amendment to the United States Constitution. Under this second prong, personal jurisdiction may be asserted over a defendant nonresident if he has minimum contacts with the state so that "the suit does not offend traditional notions of fair play and substantial justice." Int'l. Shoe Co. v.Washington (1945), 326 U.S. 310, 316, 66 S.Ct. 154. Requiring such minimum contacts protects a nonresident defendant against the burdens of litigating in a distant or inconvenient forum and ensures that the states do not encroach on each other's sovereign interest. World-Wide Volkswagen Corp. v. Woodson (1980),444 U.S. 286, 100 S.Ct. 559. Ohio courts, like those in other states, are to evaluate all assertions of state-court jurisdiction according to the standards set forth in Int'l. Shoe and its progeny. Shaffer v. Heitner (1977), 433 U.S. 186, 212,97 S.Ct. 2569. The Ohio Supreme Court contemplates Ohio's courts having jurisdiction to the full extent permitted by federal due process standards. Columbus Show Case Co. v. CEE Contracting, Inc.
(1992), 75 Ohio App.3d 559, 565.
 {¶ 15} "Minimum contacts" is defined as conduct that requires a substantial connection to the forum state, that creates continuing obligations between a defendant and a resident of the forum state, or that mandates conducting significant activities within a forum state. Hercules Tire Rubber Co. v. Murphy
(1999), 133 Ohio App.3d 97, 101. To establish sufficient minimum contacts under the Due Process Clause, a plaintiff must demonstrate: (1) the defendant purposefully availed himself of the privilege of acting in the forum state or caused a consequence in the forum state; (2) the cause of action arose from the defendant's activities in the forum state; and (3) the acts of the defendant or consequences caused by the defendant had a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.Fritz-Rumer-Cooke Co., Inc. v. Todd Sargent (Feb. 8, 2001), Franklin App. No. 00AP-817, citing Calphalon Corp. v. Rowlette
(C.A.6, 2000), 228 F.3d 718, 721. Accordingly, where the defendant deliberately has engaged in significant activities within a state or has created continuing obligations between himself and residents of the forum, he manifestly has availed himself of the privilege of conducting business there, and, because his activities are shielded by the benefits and protections of the forum's laws, it is presumptively not unreasonable to require him to submit to the burdens of litigation in that forum as well. Burger King Corp. v.Rudzewicz (1985), 471 U.S. 462, 475-476, 105 S.Ct. 2174.
 {¶ 16} In the present case, it is undisputed that Bobcat has no physical presence in Ohio. However, a showing that the corporation has no physical presence in the state does not automatically defeat jurisdiction of a court:
* * * Although territorial presence frequently will enhance a potential defendant's affiliation with a State and reinforce the reasonable foreseeability of suit there, it is an inescapable fact of modern commercial life that a substantial amount of business is transacted solely by mail and wire communications across state lines, thus obviating the need for physical presence within a State in which business is conducted. So long as a commercial actor's efforts are "purposefully directed" toward residents of another State, we have consistently rejected the notion that an absence of physical contacts can defeat personal jurisdiction there. * * *
Columbus Show Case, supra, at 565, citing Burger King,
supra, at 476.
 {¶ 17} Construing the evidence in a light most favorable to Ricker, we conclude that the evidence before the trial court was sufficient to survive a motion to dismiss based upon the demonstration of sufficient minimum contacts by Bobcat with Ohio to satisfy due process concerns. Although Bobcat did not have a physical presence in Ohio, the evidence establishes that the nonresident Bobcat had a continuous business relationship with the Ohio-situated Ricker over a significant period and that Bobcat's efforts in obtaining and maintaining insurance were regularly directed to Ohio. Kingsland initially met with Ricker in Columbus and discussed Ricker's services and fees. Bobcat's representatives also faxed and mailed several documents to Ricker at his Ohio office. The documents exchanged between the parties concerned the specifics of the services Ricker was to perform for Bobcat in the future, Ricker's monthly fees, Bobcat's business operations information necessary for Ricker to carry out his obligations, estimates of premiums Ricker negotiated, renewal information, and the details of Ricker's efforts to obtain suitable insurance for Bobcat. Bobcat's representatives also spoke with Ricker in his Ohio office. Further, Bobcat continually mailed monthly payments to Ricker's Ohio office for one year. It is apparent that the parties' course of dealing consisted of more than a "one-shot deal" or a single, isolated act, which courts have found generally insufficient, alone, to establish sufficient minimum contacts. See Kleinfeld v. Link (1983),9 Ohio App.3d 29; see, also, Hwy. Auto Sales, Inc. v. Auto-Konig ofScottsdale, Inc. (N.D.Ohio 1996), 943 F.Supp. 825, 830-831
(merely entering a contract with a resident of the forum state, without more, is insufficient to automatically establish sufficient minimum contacts). These contacts by Bobcat with Ohio were also not "random," "fortuitous," or "attenuated." BurgerKing Corp., supra, at 475-476. Bobcat made its contacts with Ricker in Ohio purposefully to further its business activities and increase profits.
 {¶ 18} Considering the facts outlined above, we find Bobcat's activities were sufficient to satisfy the minimum-contacts standard of Int'l. Shoe, and the Ohio court's exercise of jurisdiction would not violate Bobcat's due process rights under the Fourteenth Amendment. We also find that traditional notions of fair play and substantial justice would not be offended if the Ohio court exercised jurisdiction. Accordingly, viewing the allegations in the pleadings and documentary evidence in a light most favorable to Ricker, and resolving all reasonable competing inferences in favor of him, as we must do based upon our standard of review, we find Ricker has made a prima facie showing of jurisdiction sufficient to withstand Bobcat's motion to dismiss.
 {¶ 19} In addition, Ohio is not an inconvenient forum for trial. In Chambers v. Merrell-Dow Pharmaceuticals, Inc. (1988),35 Ohio St.3d 123, the Ohio Supreme Court adopted the doctrine of forum non conveniens, which provides that, notwithstanding proper jurisdiction and venue, a trial judge has discretion not to exercise jurisdiction if the forum is seriously inconvenient for trial and if a more appropriate forum is available to the plaintiff. Id. The doctrine is designed to prevent a plaintiff from using a liberal venue statute to vex, oppress, or harass a defendant by bringing a suit in a forum unrelated to the parties or cause of action. Gulf Oil Corp. v. Gilbert (1946),330 U.S. 501, 67 S.Ct. 839. A plaintiff's choice of forum is not to be disturbed except for "weighty reasons," and the case should be dismissed only if the balance is strongly in favor of defendant. Id.
 {¶ 20} In determining whether there is a more convenient forum for the case before it, a trial court must balance all relevant public and private interest factors. The public interest factors include: (1) the administrative difficulties and delay to other litigants; (2) the imposition of jury duty upon the citizens of a community that has very little relation to the litigation; (3) a local interest in having localized controversies decided at home; and (4) the appropriateness of litigating a case in a forum familiar with the applicable law.Chambers, supra, at 127. Private interest factors include: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process for attendance of unwilling witnesses; (3) the cost of attaining willing witnesses; (4) the possibility of a view of the premises, if a view would be appropriate in the action; and (5) all other practical problems that make trial of a case easy, expeditious, and inexpensive. Id. The weight given to any of these factors depends on the particular facts of each case. Glidden Co. v. HM Holdings, Inc.
(1996), 109 Ohio App.3d 721.
 {¶ 21} As to the public interest factors, there are few administrative difficulties by having the matter heard in Ohio. Although several witnesses from Bobcat are present in Florida, Ricker's office is in Ohio, where there also exists witnesses as well as files related to the parties' dealings. We do not see that there would be delay to other litigants by having the case heard in Ohio. Further, as we have found Ohio has a significant relationship to the litigation, the imposition of jury duty upon the citizens of Ohio would not be unduly burdensome. The Ohio court also has an interest in having the controversy settled in its jurisdiction because the controversy arose in Ohio based upon a contract that was allegedly formed in Ohio. Given Ricker's allegation that the oral contract allegedly was entered into in Ohio, Ohio law would apply, and it would be appropriate to litigate the case in a forum familiar with Ohio contract law.
 {¶ 22} As for the private interest factors, in the present case, there is a relative ease of access to sources of proof in Ohio. Ricker's office is in Ohio, as well as his files relating to the parties' dealings and communications. Certainly, Bobcat also possesses a file containing the business dealings between the parties in Florida, but producing them for use in Ohio would be relatively inexpensive and uncomplicated. Further, although Kingsland and Moses reside in Florida and would likely be called as witnesses, Ricker would also have to testify, and he resides in Ohio. Thus, no matter if the proceedings were held in Ohio or Florida, one of the parties would be burdened to some extent. Because Ricker alleges Bobcat initiated the relationship and negotiated the terms in Ohio, Bobcat should have expected that Ohio would have a desire to litigate any controversy arising from such relationship and negotiation, and should have anticipated some burden would result if a disagreement arose. Also, as the issue is a legal issue that is dependent upon testimony and documentary evidence, there would be no need to view Bobcat's Florida premises. Finally, we see no other practical problems that would make litigating the case in Ohio difficult, slow, or unnecessarily expensive, and we do not see Florida as being any more convenient a forum than Ohio. As both the private and public interest factors weigh in favor of Ricker's choice of jurisdiction, we will not disturb his choice of Ohio as the forum for his legal action. Therefore, for the reasons outlined above, we conclude that the trial court erred in granting Bobcat's motion to dismiss based upon lack of jurisdiction or, in the alternative, on the grounds of forum non conveniens. Ricker's assignment of error is sustained.
 {¶ 23} Accordingly, Ricker's sole assignment of error is sustained, the judgment of the Franklin County Court of Common Pleas is reversed, and this matter is remanded to that court for proceedings in accordance with law and consistent with this opinion.
Judgment reversed and cause remanded.
Bryant and McCormac, JJ., concur.
McCormac, J., retired of the Tenth Appellate District, assigned to active duty under authority of Section 6(C), Article IV, Ohio Constitution.