OPINION
{¶ 1} Petitioner-appellant, Lou Ann Carroll, appeals the decision of the Belmont County Common Pleas Court awarding custody of a minor child to petitioner-appellee, Sherol Rayl. The trial court declared the natural parents to be unsuitable parents and denied the respective claims for custody of both the natural mother and father. Only appellant, the minor child's natural mother, now appeals.
 {¶ 2} Shane Rayl, a minor child, is the subject of the custody dispute at bar. Appellant, Lou Ann Carroll, is the natural mother of the minor child, and Roger Rayl is the child's natural father. The mother and father never married; however, they have maintained an intermittent relationship over the past eighteen years. The father is employed as a heavy equipment operator in Nebraska and had previously been convicted of a felony drug offense. The mother, appellant, lived in Moundsville, West Virginia prior to the commencement of this action. Appellant claimed a monthly income of $400, $300 of which is derived from food stamps. Throughout the course of the proceedings, the mother resided with various relatives in West Virginia. She then stated her intention to, and did actually, relocate to the home of Roger Rayl in Nebraska, where she currently resides.
 {¶ 3} Prior to 2001, Shane Rayl resided with his natural mother and attended school in Moundsville, West Virginia. During the 1999-2000 and 2000-2001 academic years, Shane experienced difficulty at school. The school reports show that Shane was consistently absent from school. During this time, Shane became increasingly involved in altercations with other students. As a result of these altercations, he was suspended several times. Subsequently, the natural mother decided that Shane should take up temporary residence with his half-brother, Sherol Rayl, beginning in February 2000.
 {¶ 4} Sherol Rayl, like Shane Rayl, is the son of Roger Rayl, but Lou Ann Carroll is not Sherol's mother. At the time, Sherol, age 29, resided in Jacobsurg, Ohio with his wife Christy, age 26. It was agreed that Shane would temporarily reside in his half-brother's home until such time that Lou Ann Carroll and Roger Rayl could both get settled in Nebraska. At such time, Shane was to go to Nebraska to live with his natural parents. In accordance with this agreement, Shane was enrolled in the Union Local School District (Ohio) on March 14, 2000. Petitioner's Exhibit #1 shows that Shane demonstrated a marked improvement in his grades and a severe decline in his truancy rate during the time that he resided with his half-brother, Sherol.
 {¶ 5} On June 26, 2000, Sherol Rayl filed a Petition for Custody of Shane in Belmont County, Ohio. The matter was heard ex parte on June 29, 2000. Temporary custody was awarded to Sherol, with visitation granted to the child's mother. Roger Rayl filed a Motion to Dismiss Petition for Custody on July 27, 2000. At the August 2, 2000 hearing, Lou Ann Carroll orally moved the court to dismiss the matter on jurisdictional grounds. The court rendered its opinion and decision regarding the jurisdictional issues on August 14, 2000. The court overruled the motions to dismiss of both the father and mother, finding that the court had jurisdiction to hear the matter.
 {¶ 6} After several hearings on the matter of custody the court, on December 8, 2000, announced its decision, including several findings of fact. First, the court found that the natural parents were unsuitable, thus it denied them custody of the minor child. The court found that it would be detrimental for the child to remain with his natural parents. Among the factors that the court considered were the father's past drug conviction, the mother's inability to establish a stable home and the natural parents' continued persistence to smoke in the presence of the minor child, who is allergic to cigarette smoke. The court also considered the recommendations of the guardian ad litem. Additionally, the court recognized the fact that Shane's attendance and academic performance increased dramatically during the period in which he resided with his half-brother.
 {¶ 7} Also, the court denied the motions for custody which were filed, individually, by the child's natural parents. The court ordered that Shane be placed in the custody of his half-brother, Sherol. Reasonable visitation rights were granted to the natural mother and father even though none had been requested by these parties. The natural parents were also ordered to provide for Shane's medical needs.
 {¶ 8} Only appellant, Lou Ann Carroll, filed an appeal of the trial court's decision on December 29, 2000. Appellant's first assignment of error states:
 {¶ 9} "THE TRIAL COURT LACKED SUBJECT MATTER JURISDICTION TO HEAR THE PETITION FOR CUSTODY[.]"
 {¶ 10} Appellant's assertion that Ohio courts did not have subject matter jurisdiction to hear the present custody matter is without merit. Appellant has asserted that jurisdiction was not proper because the minor child was a resident of West Virginia and had not lived in Ohio long enough to establish sufficient ties with the forum. The jurisdiction of Ohio courts in child custody matters is defined in R.C. 3109.22:
 {¶ 11} "(A) No court of this state that has jurisdiction to make a parenting determination relative to a child shall exercise that jurisdiction unless one of the following applies:
 {¶ 12} "(1) This state is the home state of the child at the time of commencement of the proceeding, or this state had been the child's home state within six months before commencement of the proceeding and the child is absent from this state because of his removal or retention by a parent who claims a right to be the residential parent and legal custodian of a child * * *." (Emphasis added.)
 {¶ 13} Appellant correctly indicates that the minor child had not lived in Ohio for six months prior to the filing of the custody action by appellee; however, this is not the only means by which an Ohio court may obtain jurisdiction.
 {¶ 14} Ohio courts may invoke subject matter jurisdiction in a custody proceeding when:
 {¶ 15} "(2) It is in the best interest of the child that a court of this state assumes jurisdiction because the child and his parents, or the child and at least one contestant, have a significant connection with this state, and there is available in this state substantial evidence concerning the child's present or future care, protection, training and personal relationships[.]" R.C. 3109.22(A).
 {¶ 16} The minimum qualifications of this provision have certainly been met in this case. First, the minor child is currently within the borders of the state. Secondly, the child has substantial connections with the state as he is attending school in Ohio. As appellee wishes to have the child live with him in Ohio, it is the forum which contains evidence concerning the child's present and future "care, protection, training and personal relationships." Id. While there is evidence regarding the child's past care and education in West Virginia, the statute specifically addresses evidence regarding the child's present andfuture care, not the child's past living environments. Moreover, this evidence can be relocated for use in an Ohio court.
 {¶ 17} Appellee fulfills the requirements of R.C. 3109.22(A)(2) with respect to the connections of the contestant. Appellee falls within the definition of a contestant as defined in R.C. 3109.21(A):
 {¶ 18} "`Contestant' means a parent of a child who claims a right to be the residential parent and legal custodian of the child or claims parenting time rights with respect to the child, or a person, other than a parent of a child, who claims a right to custody or visitation rights with respect to the child.
 {¶ 19} Since both appellee and his wife are residents of Ohio and intend to remain in the state, appellee certainly meets the necessary "significant connection" requirements of R.C. 3109.22.
 {¶ 20} Appellant's brief includes the argument that West Virginia would be a more convenient forum for the custody proceedings. To this end, appellant attributes the importance of the availability and access to school records and witness testimony in the state of West Virginia. Appellant overlooks the fact that none of the participants in this proceeding currently reside in West Virginia. The child and appellee both reside in Ohio, while the child's natural father resides in Nebraska. Moreover, by appellant's own admission, she no longer resides in West Virginia as she has permanently relocated to Nebraska. Consequently, it is inconceivable how, notwithstanding the legitimate findings of subject matter jurisdiction in Ohio courts, West Virginia could be seen as the most convenient forum for this litigation. See Chambers v. Merrell-DowPharmaceuticals, Inc. (1988), 35 Ohio St.3d 123, 127.
 {¶ 21} Accordingly, appellant's first assignment of error is without merit.
 {¶ 22} Appellant's second assignment of error states:
 {¶ 23} "THE TRIAL COURT ERRED AS A MATTER OF LAW BY ALLOWING THE TESTIMONY, UNDER OATH, OF GUARDIAN AD LITEM, ROSEANNE FALCONE, FOR THE REASON THAT SUCH VIOLATED THE EXPRESS PROVISIONS OF R.C. 2151.414(C) AND FURTHER THAT SUCH TESTIMONY WOULD BE HEARSAY[.]"
 {¶ 24} During the course of the trial court proceedings, the guardian ad litem, Roseanne Falcone, provided testimony under oath. Falcone's testimony was presented during a direct examination, two cross examinations and a redirect examination. At no time during any of these examinations did any of the associated counsel raise an objection to Falcone's testimony. As provided in Evid.R. 103(A)(1), counsel's failure to object to the admission of evidence and testimony constitutes a waiver to challenge such evidence upon review. An appellate court may only use the trial court's admission of evidence as grounds for reversal when there is a showing of plain error affecting a substantial right. Evid.R.103(A), (D). The Supreme Court of Ohio, however, has limited the application of the plain-error doctrine in civil cases to extremely rare cases involving exceptional circumstances that seriously affect the basic fairness, integrity, or public reputation of the judicial process, thereby challenging the legitimacy of the underlying judicial process itself. Goldfuss v. Davidson (1997), 79 Ohio St.3d 116, syllabus. In this case, the admission of the testimony did not constitute plain error.
 {¶ 25} Appellant incorrectly asserts that R.C. 2151.414(C) prohibits guardians ad litem from providing testimony under oath. The section provides, in part, that:
 {¶ 26} "In making the determinations required by this section or division (A)(4) of section 2151.353 of the Revised Code, a court shall not consider the effect the granting of permanent custody to the agency would have upon any parent of the child. A written report of the guardian ad litem of the child shall be submitted to the court prior to or at the time of the hearing held pursuant to division (A) of this section or section 2151.35 of the Revised Code but shall not be submitted under oath."
 {¶ 27} The phrase, "shall not be submitted under oath," refers specifically to the report itself, not to the findings of the guardian ad litem or any testimony that the guardian may provide during the course of the trial. The purpose of the guardian's report is to provide an informed, professional opinion of the child's circumstances and needs in order to the aid the court in making its decision. The statute states that the report itself cannot be submitted under oath, but it does not bar further testimony that may be admitted for the purposes of clarifying or expanding on the contents of the report.
 {¶ 28} Appellant has overlooked the section that immediately follows the above text. This section specifically provides for circumstances in which a court may want to hear testimony from a guardian ad litem. The statute provides, in R.C. 2151.414(D), that:
 {¶ 29} "In determining the best interest of a child at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) or (5) of section 2151.353 or division (C) of section 2151.415 of the Revised Code, the court shall consider all relevant factors, including, but not limited to, the following:
 {¶ 30} "(1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;
 {¶ 31} "(2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child[.]" (Emphasis added.)
 {¶ 32} The testimony offered by Falcone was not, as appellant maintains, hearsay. Rather, the guardian ad litem was merely providing testimony, in accordance with her best professional judgment, to fulfill the requirements of R.C. 2151.212(D).
 {¶ 33} A review of the transcripts of Falcone's testimony reveals that her testimony was limited to the expression of her professional judgment with respect to the stated objectives of R.C. 2151.414(D). There are no instances in which Falcone offered testimony that would transcend the bounds of admissible evidence and venture into the area of hearsay, as appellant contends. Furthermore, at no time did counsel for appellant offer any objections to the guardian's testimony. If the testimony of the guardian ad litem was, indeed, so egregious as to be speculative or hearsay, one would hope that appellant would have recognized this and raised timely objections. The opposite is true however, as on cross examination, appellant's counsel pursued a line of questioning which allowed the admission of even more testimony, the nature of which appellant now raises as an assignment of error. Tr. pp. 450-476.
 {¶ 34} Since the testimony of the guardian ad litem furthered the objectives stated in the Revised Code and cannot be properly classified as hearsay, the trial court acted properly in allowing it to be admitted under oath. Furthermore, there was no plain error in admitting the testimony, in absence of any objections, since appellant's rights were not compromised as a result of the admission of the testimony.
 {¶ 35} Accordingly, appellant's second assignment of error is without merit.
 {¶ 36} Appellant's third assignment of error states:
 {¶ 37} "THE TRIAL COURT ABUSED IT'S DISCRETION AS PETITIONER/APPELLEE DID NOT SHOW, BY A PREPONDERANCE OF EVIDENCE, THAT RESPONDENT/APPELLANT WAS NOT A SUITABLE PARENT AND THE COURT'S DECISION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE[.]"
 {¶ 38} An appellate court will not reverse a trial court's decision regarding the custody of children that is supported by competent and credible evidence absent an abuse of discretion. Bechtol v Bechtol
(1990), 49 Ohio St.3d 21, syllabus of the court. In determining whether the trial court abused its discretion, we cannot simply substitute our judgment for that of the trial court. Blakemore v Blakemore (1983),5 Ohio St.3d 217, 219. An abuse of discretion connotes more than an error in judgment; it implies that the trial court's attitude was unreasonable, arbitrary or unconscionable. Id.
 {¶ 39} When conducting a hearing to decide the right of natural parents to retain custody of their children, the objectives of the trial court are clearly defined by R.C. 2151.414. Division (E) lists several situations in which parents may be deemed unfit as a result of past acts of abuse, neglect, felony convictions, or repeated inability to provide for a safe and stable home for the minor child.
 {¶ 40} It is apparent from the transcript of the proceedings that sufficient evidence was presented to show, by more than a mere preponderance of the evidence, that the natural parents were unsuitable parents. Testimony was presented indicating that the natural parents grew marijuana inside of the home in which the minor child lived. Tr. p. 456. Shane, the child, reported to the guardian ad litem that his parents were engaged in the sale of marijuana. Tr. 458. There was even testimony of one occurrence in which, while the child was riding in a car from Nebraska to West Virginia, his parents forced him to sit on a garbage bag full of marijuana. Tr. pp. 460-461. These incidents, combined with the father's past felony conviction, the mother's inability to provide a safe and stable home, and Shane's troubles at school, are more than sufficient indicia of unsuitable parenting. Thus, the court was clearly within its discretion to declare the natural parents to be unfit.
 {¶ 41} The Revised Code also charges the trial court with looking out for the best interest of the child in making its determination of custody. The code provides in R.C. 2151.414(D) that a court:
 {¶ 42} "In determining the best interest of a child at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) or (5) of section 2151.353 or division (C) of section2151.415 of the Revised Code, the court shall consider all relevant factors, including, but not limited to, the following:
 {¶ 43} "(1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;
 {¶ 44} "(2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
 {¶ 45} "(3) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999;
 {¶ 46} "(4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;
 {¶ 47} "(5) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child."
 {¶ 48} The court was within its discretion, in light of the evidence that was presented, to award custody to appellee. Shane's marked improvement in school, his attendance, and in his dealings with other students are indicia that he had more potential to thrive in appellee's home than he ever did in an environment provided by his natural parents. Moreover, Shane expressed to his guardian ad litem that he desired to remain in the custody of appellee in Ohio, rather than move with his natural parents to Nebraska. The willingness of appellee to take custody of Shane provided the court with a suitable remedy to the custody question, one which would benefit the child.
 {¶ 49} A review of the transcript and the testimony that was presented indicates that the trial court did not abuse its discretion when it awarded custody of the child to appellee. The evidence indicates that the natural parents were unsuitable custodians for the child, and that appellee presented a safe and healthy environment in which the child could thrive.
 {¶ 50} Accordingly, appellant's third assignment of error is without merit.
 {¶ 51} The judgment of the trial court is hereby affirmed.
Vukovich, J., concurs.
DeGenaro, J., concurs.