[Cite as *Cincinnati Ins. Co. v. LOMC, L.L.C.*, 2022-Ohio-930.]

# IN THE COURT OF APPEALS OF OHIO

### SEVENTH APPELLATE DISTRICT
### JEFFERSON COUNTY

## THE CINCINNATI INSURANCE COMPANY,

Plaintiff-Appellant,

v.

## LOMC LLC, et al.,

Defendants-Appellees.

---

**OPINION AND JUDGMENT ENTRY**
**Case No. 21 JE 0012**

---

Civil Appeal from the
Court of Common Pleas of Jefferson County, Ohio
Case No. 20-CV-333

**BEFORE:**
Cheryl L. Waite, Gene Donofrio, David A. D'Apolito, Judges.

---

**JUDGMENT:**
Affirmed.

---

*Atty. John G. Farnan* and *Atty. Joshua M. Miklowski*, Weston Hurd LLP, The AECOM Building, 1300 East 9th Street, Suite 1400, Cleveland, Ohio 44114, for Plaintiff-Appellant

*Atty. Kristina S. Dahmann*, Ice Miller LLP, 250 West Street, Columbus, Ohio 43215 for Defendants-Appellees.

Dated:  March 21, 2022

_____

**WAITE, J.**

{¶1}  Appellant, The Cincinnati Insurance Company ("CIC"), appeals from a Jefferson County Common Pleas Court judgment entry dismissing its complaint against Appellee, Garrett, LLC ("Garrett").  Based on the following, the judgment of the trial court is affirmed.

<u>Factual and Procedural History</u>

{¶2}  This is a declaratory judgment action filed by CIC, an Ohio-based insurance company, seeking a determination regarding its coverage obligations to Garrett, a Kentucky-based limited liability company.  The dispute centers around a former foundry located in Kendallville, Indiana ("the foundry").  A brief description of the project is necessary to address the claims alleged by the parties.  The foundry was previously owned and operated by Dalton, Inc.  While in operation, Dalton had obtained approval from the Indiana Department of Environmental Management ("Dept.") to discard used foundry sands in an area west of the main foundry building creating a mound of material referred to by the parties as a monofill.  Pursuant to its agreement with the Dept., Dalton capped the monofill with layers of clay, soil and vegetation, respectively.  At the time the monofill was capped, the sand in the monofill had not been processed to recover any recyclable metals that it may have contained.

{¶3}  After the foundry ceased operations, the property underwent an environmental assessment by the Dept.  As part of the assessment, the Dept. approved Garrett for a scrap metals reclamation plan ("reclamation plan").  The reclamation plan provided that Garrett would hire a contractor to remove the cap from the monofill, remove

<u>Case No. 21 JE 0012</u>

the foundry sands inside, and then sift through the sands for recyclable metals. The sifted sand would then be returned to the monofill and the cap would be replaced. The plan was approved by the Dept. on March 19, 2015.

{¶4}  Garrett initially hired Industrial Steel Products, Inc. as contractor for the project. Shortly after beginning the project, work was halted and Industrial Steel went out of business. On October 20, 2016, Garrett hired LOMC, a Pennsylvania-based limited liability company, as contractor to complete the project. LOMC had locations in both Pennsylvania and Mingo Junction, Ohio, and was registered to work in Indiana. Under the terms of the contract, LOMC agreed to sift through the foundry site and remove the metals in accordance with the terms of the reclamation plan. LOMC would sell the metals and provide Garrett with a 15% royalty of the net sales. The contract required LOMC to provide $1 million of per occurrence general liability insurance, with Garrett listed as an additional named insured on the policy. The contract also specified that LOMC would indemnify and hold Garrett harmless. According to the record, LOMC informed their commercial general liability insurer, CIC, of the insurance requirements of its contract with Garrett. An agent for CIC, Assured Partners of Ohio, LLC, d/b/a Dawson Insurance Agency ("Dawson"), an Ohio limited liability company, informed LOMC that Garrett was a named insured on the policy and that the policy had the necessary liability amounts as well as an indemnification provision. LOMC presented a certificate of liability insurance with CIC, purchased through the Dawson agency, with Garrett listed as a named insured. A copy of the certificate has been made a part of the record.

{¶5}  The work performed by Garrett was conducted over a time period which spanned two insurance policy periods. The first policy term was effective May 29, 2014

Case No. 21 JE 0012

to May 29, 2017.  The second policy provided the same coverage, with Garrett listed as a named insured, and was effective May 29, 2017 to May 29, 2020.

**{¶6}**  On June 6, 2017, Garrett submitted a proposed addendum to the reclamation plan regarding modifications to the recapping of the monofill and cleanup of the site.  On October 10, 2017, the Dept. approved the modifications to the reclamation plan and LOMC began working at the site.  On December 21, 2017, the Dept. sent a violation letter to Garrett informing it that an inspection of the site had been performed on November 14, 2017, after LOMC had begun working.  The letter stated that, after being sifted, the sand had to be returned to the monofill, which had not been performed appropriately.  Garrett responded to the Dept. on January 21, 2018, informing them that the issue would be addressed.  On March 6, 2018, the Dept. sent Garrett a second violation letter which listed three violations at the site:  (1) exceeding the limited area in which reclamation activities were approved to take place; (2) disturbing the outer side slopes of the monofill; and (3) failing to control leaching and erosion on the site.  Garrett responded on April 2, 2018, advising that LOMC had ceased collecting all the sand from the monofill and that, after sifting, the sand would be returned.  Garrett informed the Dept. that the project would be completed a few weeks later.  Garrett sent a second letter to the Dept. on April 27, 2018, notifying the Dept. that it had addressed the leaching and erosion issues which it claimed had been caused by LOMC's negligence.

**{¶7}**  On May 4, 2018, the Dept. sent a third violation letter to Garrett, stating that another inspection had been performed on April 11, 2018 and several additional violations had been found.  Garrett informed the Dept. on May 7, 2018, that LOMC had been given a copy of the violation letter and was ordered to rectify the violations.  On October 25,

Case No. 21 JE 0012

2018, the Dept. issued a Notice of Violation and Proposed Agreed Order to Garrett that addressed all of the existing violations and notifying Garrett that failure to remedy the violations would result in escalated enforcement action, including a $25,000 per day penalty for each separate violation. Garrett began undertaking efforts to mitigate its damages at the site, but the Dept. required Garrett to investigate and remediate the environmental damage to the site, causing Garrett to incur additional environmental response costs.

{¶8}   On August 6, 2020, counsel for Garrett sent a demand letter to LOMC at its Mingo Junction, Ohio location, demanding that LOMC and its insurers defend and indemnify Garrett for any alleged environmental liability or property damage associated with LOMC's work at the foundry site. In the letter, Garrett alleged that LOMC had negligently handled the processing of the metals and caused waste to spill into ditches around the site and requested a response by August 30, 2020. A copy of the letter is included in the record. On August 11, 2020, Garrett sent a letter to CIC at its Indiana office, requesting that LOMC and CIC provide defense and indemnification to Garrett. Garrett sent a copy of the same letter, by email to CIC headquarters in Ohio. The letter requested a response by August 31, 2020.

{¶9}   On October 9, 2020, CIC sent a letter to Garrett asserting that Garrett was not a named insured under the policy and that, even if insured under the policy, the violations found by the Dept. were not covered by the policy. On the same day, CIC filed this declaratory judgment action against Garrett and LOMC, seeking a determination that it owes neither a defense or indemnity to Garrett or its insured, LOMC. Shortly thereafter, CIC filed an amended complaint on November 6, 2020, seeking a declaration that (1) CIC

does not owe a defense or indemnity to Garrett or LOMC on the Dept. claims; (2) Ohio law applies to the interpretation of the insurance policy; and (3) the insurance policy with LOMC does not provide coverage for civil fines and penalties. According to the record, Garrett was served with both complaints. Service was obtained on LOMC through their statutory agent. However, LOMC never made an appearance in the action and is not a party to this appeal.

{¶10} On November 10, 2020, Garrett filed an action in the Noble County, Indiana Circuit Court, naming CIC; LOMC; Assured Partners, Inc.; Assured Partners Capital, Inc.; Assured Partners of Ohio, LLC dba Dawson Insurance. Garrett raised claims sounding in negligence, breach of contract, nuisance and seeking a declaration that Garrett is a named insured under the CIC policy and that, pursuant to Indiana law, the policy provides coverage to Garrett on the claims brought by the Dept. Garrett obtained service on all parties in the Indiana action, including LOMC.

{¶11} On November 13, 2020, Garrett filed a motion to dismiss the amended complaint in this Ohio action asserting: (1) the trial court lacked personal jurisdiction over Garrett; (2) CIC failed to join an indispensable party, Dawson Insurance, to the lawsuit; and (3) pursuant to the doctrine of forum non conveniens, Indiana is a more logical forum. CIC filed an opposition to the motion on November 24, 2020, arguing that Ohio was the more logical forum. Garrett filed a reply brief on December 8, 2020. A hearing was held on the motion on December 14, 2020. On January 5, 2021, the trial court issued a judgment entry granting Garrett's motion to dismiss, concluding that it lacked personal jurisdiction over Garrett. The trial court concluded:

1. Garrett LLC is dismissed from this action other than on the merits solely by reason of this Court's lack of in personam jurisdiction over that party.

2. Jurisdiction is proper over Cincinnati Insurance Company and Defendant LOMC LLC.

3. In order to avoid inconsistent rulings with respect to the Cincinnati policy's environmental exclusion, this case is stayed until such time as service against all parties is perfected in an Indiana court of proper jurisdiction and until such time as that court accepts jurisdiction.

4. At such time as the proper Indiana court renders its final judgment, Ohio will give full faith and credit to that judgment.

5. Costs to Cincinnati Insurance Company.

(1/5/21 J.E.)

{¶12} CIC filed a notice of appeal of this judgment entry on January 14, 2021. On February 5, 2021, Garrett served CIC with a motion to dismiss the appeal, contending this Court lacked jurisdiction. CIC filed a motion in opposition. On February 16, 2021, this Court issued a *sua sponte* judgment entry concluding, after an independent review of the record, that we were without appellate review jurisdiction. We determined that because the trial court stayed the matter until the Indiana court accepted jurisdiction, the trial court's judgment was not a final appealable order. *Cincinnati Ins. Co., v. LOMC, LLC, et al.,* 7th Dist. Jefferson No. 21 JE 0002.

Case No. 21 JE 0012

{¶13} On March 15, 2021, CIC filed a Notice of Satisfaction of Conditions for Dismissal and Motion for Dismissal and Entry of Final Judgment with the trial court, asserting that all of the conditions for the stay had been met. Specifically, CIC filed a certified docket and certified pleadings from the Indiana action. CIC acknowledged that Garrett had obtained service of process on all named defendants in the case in Noble County, Indiana and the Indiana court had accepted jurisdiction.

{¶14} On April 13, 2021, Garrett filed a response brief. Garrett first argued that it did not waive the trial court's previous determination that it lacked personal jurisdiction over Garrett in the Ohio action. Garrett also contended that CIC's claim that the Indiana court had accepted jurisdiction was incorrect. Garrett confirmed that service was obtained on all parties in the Indiana matter and that the matter was proceeding through the court. However, Garrett asserted that the Indiana court had not addressed the issue of whether it accepted jurisdiction and that CIC's answer in the case raised the affirmative defense of jurisdiction and requested a dismissal of the Indiana action based on principles of comity, arguing that the Ohio action concerns the same parties and substantially the same subject matter. Another party, Assured Partners, also raised the affirmative defense of personal jurisdiction in their answer filed in the Indiana action. Garrett maintained that since these defenses had not been adjudicated or withdrawn in Indiana, the court had not accepted jurisdiction over all parties in that action and that the stay should remain in effect in the Ohio action.

{¶15} On May 3, 2021, the trial court issued a judgment concluding:

By order of January 5, 2021 this Court Stayed [sic] this action on the basis of forum non conveniens and ordered that the case would be dismissed

when the Circuit Court of Noble County, Kendallville, Indiana (Indiana Court) accepted jurisdiction and all parties were served.

From the Cincinnati Motion and Memorandum and Garrett's Response it would appear that all parties have been served in the Indiana Court. The dispute centers on whether or not the Indiana Court has accepted jurisdiction. Courts do not generally accept jurisdiction by an express order. Rather, they accept jurisdiction by failing to reject it. The Indiana Court has not rejected jurisdiction and has therefore accepted it, even though motions challenging jurisdiction have been filed and are as yet un-ruled upon.

Ordinarily a delay in dismissing this case while Indiana ruled upon all jurisdictional motions would be harmless. But that is not the case here. Cincinnati wants to appeal this Court's order of January 5, 2021 and should be allowed to do so. A delay in a final dismissal would backhandedly deny Cincinnati that opportunity. There is nothing fair about that.

* * *

For all of the reasons set forth in this order and this Court's prior order of January 5, 2021, this action is Dismissed upon the basis of forum non conveniens. This is a Final Appealable Order and there is no just cause for delay of an appeal.

(5/3/21 J.E.)

**{¶16}** CIC filed this timely appeal.

Case No. 21 JE 0012

ASSIGNMENT OF ERROR NO. 1

The trial court erred when it concluded that it lacked in personam jurisdiction over Garrett LLC and granted Garrett's Motion to Dismiss.

**{¶17}** In its first assignment of error, CIC argues the trial court erred when it dismissed Garrett from the action for lack of personal jurisdiction.

**{¶18}** Personal jurisdiction is the power of a court to enter a valid judgment against a party in a lawsuit. *Meadows v. Meadows,* 73 Ohio App.3d 316, 319, 596 N.E.2d 1146 (3d Dist.1992). Whether a trial court has personal jurisdiction over a defendant is a matter of law which appellate courts review *de novo. Baird Bros. Sawmill, Inc. v. Augusta Const.,* 7th Dist. Mahoning No. 98 CA 152, 2000 WL 817068, *2 (Jun 19, 2000).

**{¶19}** When determining whether an Ohio court has personal jurisdiction over a nonresident defendant, the court is obligated to engage in a two-step analysis. First, the court must determine whether R.C. 2307.382, Ohio's long-arm statute, and the complementary civil rule, Civ.R. 4.3(A)(1), confer personal jurisdiction on the court. *Snyder Computer Sys., Inc. v. Stives,* 175 Ohio App.3d 653, 2008-Ohio-1192, ¶ 11 (7th Dist.). If so, the second step is to determine whether granting personal jurisdiction would deprive the nonresident defendant the right to due process of law pursuant to the Fourteenth Amendment to the United States Constitution. *Id.*

**{¶20}** Ohio's long-arm statute, R.C. 2307.382, sets forth the requirements for a determination that a court has personal jurisdiction over a nonresident defendant. The statute provides:

(A) A court may exercise personal jurisdiction over a person who acts directly or by an agent, as to a cause of action arising from the person's:

(1) Transacting any business in this state;

(2) Contracting to supply services or goods in this state;

(3) Causing tortious injury by an act or omission in this state;

(4) Causing tortious injury in this state by an act or omission outside this state if the person regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state;

(5) Causing injury in this state to any person by breach of warranty expressly or impliedly made in the sale of goods outside this state when the person might reasonably have expected such person to use, consume, or be affected by the goods in this state, provided that the person also regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state;

(6) Causing tortious injury in this state to any person by an act outside this state committed with the purpose of injuring persons, when the person might reasonably have expected that some person would be injured thereby in this state;

Case No. 21 JE 0012

(7) Causing tortious injury to any person by a criminal act, any element of which takes place in this state, which the person commits or in the commission of which the person is guilty of complicity.

(8) Having an interest in, using, or possessing real property in this state;

(9) Contracting to insure any person, property, or risk located within this state at the time of contracting.

{¶21} The language of Civ.R. 4.3(A) is similar to the long-arm statute:

(A) **When service permitted**. Service of process may be made outside of this state, as provided in this rule, in any action in this state, upon a person who, at the time of service of process, is a nonresident of this state or is a resident of this state who is absent from this state. "Person" includes an individual, an individual's executor, administrator, or other personal representative, or a corporation, partnership, association, or any other legal or commercial entity, who, acting directly or by an agent, has caused an event to occur out of which the claim that is the subject of the complaint arose, from the person's:

(1) Transacting any business in this state;

(2) Contracting to supply services or goods in this state;

(3) Causing tortious injury by an act or omission in this state, including, but not limited to, actions arising out of the ownership, operation, or use of a motor vehicle or aircraft in this state;

(4) Causing tortious injury in this state by an act or omission outside this state if the person regularly does or solicits business, engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state;

(5) Causing injury in this state to any person by breach of warranty expressly or impliedly made in the sale of goods outside this state when the person to be served might reasonably have expected the person who was injured to use, consume, or be affected by the goods in this state, provided that the person to be served also regularly does or solicits business, engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state;

(6) Having an interest in, using, or possessing real property in this state;

(7) Contracting to insure any person, property, or risk located within this state at the time of contracting;

(8) Living in the marital relationship within this state notwithstanding subsequent departure from this state, as to all obligations arising for spousal support, custody, child support, or property settlement, if the other party to the marital relationship continues to reside in this state;

(9) Causing tortious injury in this state to any person by an act outside this state committed with the purpose of injuring persons, when the person to be served might reasonably have expected that some person would be injured by the act in this state;

(10) Causing tortious injury to any person by a criminal act, any element of which takes place in this state, that the person to be served commits or in the commission of which the person to be served is guilty of complicity.

{¶22} A party may challenge personal jurisdiction in a motion to dismiss. Civ.R. 12(B)(2). When a defendant files a motion to dismiss a complaint for lack of personal jurisdiction, the plaintiff has the burden of making a prima facie showing of personal jurisdiction. *Fallang v. Hickey*, 40 Ohio St.3d 106, 107, 532 N.E.2d 117 (1988). In determining whether to grant a motion to dismiss based on a lack of personal jurisdiction, the trial court is not confined to the allegations contained in the complaint, but may hear the matter on affidavits, depositions, interrogatories, or by oral testimony. *Arrow Machine Co., Ltd. v. Array Connector Corp.,* 11th Dist. Lake No. 2008-L-161, 2009-Ohio-1439, ¶ 32. Where the motion is decided without holding a hearing, the trial court is "to view allegations in the pleadings and the documentary evidence in a light most favorable to the plaintiffs, resolving all reasonable competing inferences in their favor." *Goldstein v. Christiansen,* 70 Ohio St.3d 232, 236, 638 N.E.2d 541 (1994).

{¶23} In *International Shoe Co. v. Washington,* 326 U.S. 310, 66 S.Ct. 154 (1945), the United States Supreme Court announced that a state can exercise personal jurisdiction over a nonresident if the resident, has "certain minimum contacts with it such

that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.' " (Citation omitted.)  *Id.* at 316.

**{¶24}**  In *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 105 S.Ct. 2174 (1985), the Supreme Court defined the term "minimum contacts" concluding, "the constitutional touchstone remains whether the defendant *purposefully* established 'minimum contacts' in the forum State."  (Emphasis added.)  *Id.* at 474.   A nonresident defendant has purposefully established minimum contacts where the contacts proximately result from actions by the defendant himself that create a "substantial connection" with the forum state, or where the defendant has deliberately engaged in significant activities in a state or has created "continuing obligations" between himself and residents of the forum.  *Id.* at 475-476.   The court reasoned that by conducting such activity the nonresident defendant availed himself of the benefits and laws of the forum state and, thus, should reasonably expect to submit to litigation within the state as well.  *Id.* at 474.

**{¶25}** Establishing minimum contacts within the state is not the end of the inquiry as to whether personal jurisdiction exists.

> Once it has been decided that a defendant purposefully established minimum contacts within the forum State, these contacts may be considered in light of other factors to determine whether the assertion of personal jurisdiction would comport with "*fair play and substantial justice."*

*Id.*

**{¶26}** Other factors include:  the burden on the defendant; the forum state's interest in adjudicating the action; the plaintiff's interest in obtaining convenient, effective

relief; the interstate judicial system's interest in the efficient resolution of controversies; and the shared interest of states in furthering fundamental social policies. *Id.* Where a nonresident defendant has been found to have purposefully directed his activities at the forum state's residents, the nonresident must present a compelling case that other factors would render personal jurisdiction unreasonable. *Id.* at 476-477.

{¶27} In the instant matter, Garrett filed a motion to dismiss pursuant to Civ.R. 12(B)(2). In its motion, Garrett argued: (1) the trial court lacked personal jurisdiction over Garrett; (2) even if the trial court had personal jurisdiction over Garrett, the Indiana case was a "more comprehensive action," with additional claims against additional defendants making the Indiana court the proper venue; (3) even if Ohio is the proper venue, it is an inconvenient and improper forum under the doctrine of *forum non conveniens* and basic principles of comity. (11/13/20 Defendant's Motion to Dismiss).

{¶28} CIC argued in its motion in opposition that the court has personal jurisdiction over Garrett because Garrett had multiple purposeful contacts in Ohio from which the lawsuit arises. CIC also contended that the principles of comity and the doctrine of *forum non conveniens* both supported Ohio as the appropriate, most convenient forum. Specifically, that it is "a straightforward insurance coverage case, involving an Ohio insurer with its home office in Cincinnati, Ohio; an Ohio agent based in Rocky River, Ohio; and a Pennsylvania insured with a business address in Mingo Junction, Ohio. Ohio law applies in the interpretation of the subject insurance policy." (11/25/20 Plaintiff's Brief in Opposition to Defendant's Motion to Dismiss, pp. 1-2.)

{¶29} A hearing was held on Garrett's motion to dismiss. Counsel for Garrett and CIC both argued according to their briefs. Additionally, counsel for Garrett presented

unrebutted argument that the CIC insurance policies at issue contain an environmental pollution exclusion that precludes coverage for any fines or penalties related to negligent environmental pollution by the insured. Counsel cited case law from both jurisdictions which held that Ohio enforces such exclusions, while Indiana courts do not.

{¶30} The trial court issued a judgment entry on January 5, 2021 concluding that the court lacked personal jurisdiction over Garrett because the only evidence of contact with Ohio in the record are the copies of two letters forwarded by Garrett to CIC and LOMC, respectively, inquiring about coverage under LOMC's CIC policy, which was insufficient to establish personal jurisdiction over Garrett in the matter. The trial court did conclude it retained personal jurisdiction over LOMC and CIC. Finally, the trial court ultimately dismissed the action on the basis of *forum non conveniens*, which will be addressed more fully in the analysis of the second assignment of error.

{¶31} After the January 5, 2021 ruling was issued, CIC appealed. We determined *sua sponte* that we did not have jurisdiction on the matter because there was no final appealable order due to a stay. CIC filed a motion with the trial court, asserting that the conditions precedent had been met and the stay should be lifted. Garrett filed a motion in opposition contending the Indiana court had not issued a ruling on whether it had jurisdiction. Another hearing was held. On May 3, 2021, the trial court issued a second judgment entry entitled "Final Order of Complete Dismissal with No Just Cause for Delay", concluding that all the parties had been served in the Indiana action and, contrary to Garrett's argument, the Indiana court accepted jurisdiction "by failing to reject it." The court acknowledged that "even though" defendants' challenges to personal jurisdiction in the Indiana case had yet to be resolved, the fact that the court did not reject the filing

Case No. 21 JE 0012

reflected that it had accepted jurisdiction. The court also incorporated its findings and orders from the January 5, 2021 judgment, stating, "[f]or all of the reasons set forth in this order and this Court's prior order of January 5, 2021, this action is Dismissed upon the basis of forum nonconveniens." (5/3/21 J.E.)

**{¶32}** As it relates to personal jurisdiction over Garrett, the court's analysis was set forth in the January 5 entry incorporated into the May 3 entry. The court concluded:

**GARRETT'S CONTACT WITH OHIO**

Garrett insisted that it be an additional insured in a liability policy purchased by LOMC. Garrett did not pick the policy, nor did Garrett pick the state from which the policy would be written. Garrett did not negotiate the policy or pay for the policy. All of that was done by LOMC.

When the State of Indiana put Garrett and LOMC on notice of its claims Garrett sent two letters to Ohio. One went to LOMC in Mingo Junction, Ohio and the other went to Cincinnati Insurance Company. Both demanded coverage that it had negotiated in Indiana. That's it. No other contact with Ohio is even alleged. Two factors are important here. First, the letter to LOMC demanded rights that were negotiated and created in Indiana. Second, the letter to Cincinnati Insurance demanded coverage in Indiana from a policy that was negotiated and paid for by someone else (LOMC). Garrett did nothing in Ohio to create those rights. It simply demanded the rights that were created and paid for by someone else (LOMC).

In personam jurisdiction is based solely upon two 55-cent letters sent from Kentucky to Ohio demanding alleged rights negotiated, created and paid for by someone else. That, along with a wink and a nod, might qualify as an excuse for personal jurisdiction but it hardly rises to a valid reason. What if the letters had been sent to LOMC's office in Pennsylvania and a Cincinnati Insurance office in Kentucky or Indiana? If an Ohio resident causes a traffic accident in Indiana and the Indiana victim writes a letter to the Ohio tortfeasor, does that create jurisdiction in Ohio? What if the Indiana victim writes a demand letter to the Ohio tortfeasor's Ohio insurance carrier? Must he now litigate in Ohio? Hopefully we have not wandered that far from the principles originally announced in *International Shoe versus Washington,* 326 U.S. 310 (1945).

For all of the reasons set forth above, the Court finds that it has no in personam jurisdiction over Garrett who is dismissed from this case for lack of in personam jurisdiction. This is a dismissal other than on the merits of the underlying policy claims.

(1/5/21 J.E.)

**{¶33}** After Garrett filed his motion to dismiss based on lack of personal jurisdiction, CIC had the burden of making a prima facie showing the court did have personal jurisdiction. *Speck v. Mut. Serv. Life Ins. Co.,* 65 Ohio App.3d 812, 815, 585 N.E.2d 509 (8th Dist.1990). In hearing the issue, the trial court was not confined to the allegations in the complaint on review of a motion to dismiss for lack of personal

Case No. 21 JE 0012

jurisdiction. *Southgate Dev. Corp. v. Columbia Gas Transmission Corp.,* 48 Ohio St.2d 211, 358 N.E.2d 526 (1976), paragraph one of the syllabus. The court may rely on affidavits, supporting documents and oral testimony in order to make its determination.

{¶34} After a review of the record, we conclude the trial court was correct that it does not have in personam jurisdiction over Garrett. Garrett did not purposefully direct any business activities in Ohio at any point during the time period in question and certainly not with any of the parties to this action. CIC maintains that this declaratory action is based on an Ohio insurance policy, written by an Ohio organization and purchased and executed in Ohio. While those statements are correct, the missing piece is Garrett -- the nonresident defendant over which personal jurisdiction is sought. As noted by the trial court, the policy in question was negotiated between LOMC and CIC by its agent, Dawson, in Ohio. It was LOMC that purchased the policy from CIC in Ohio to fulfill its obligations under the foundry contract with Garrett. The totality of Garrett's conduct took place within the state of Indiana. According to the record before us, the only instance where Garrett had any contact with Ohio was by sending copies of written letters to CIC and LOMC to inquire about insurance coverage as a third party beneficiary under its Indiana contract with LOMC for an Indiana project. These letters were first sent to the entities at offices in other states and then copied to the Ohio offices. It is also important to note that the policy contains no choice of law provision. Certainly, had CIC intended for the more favorable laws of Ohio regarding the environmental exclusion to apply, it merely had to designate that Ohio law prevailed in a choice of law provision. CIC argues that Garrett was transacting business in Ohio for purposes of the long-arm statute and related civil rule when it sent the letters demanding coverage under LOMC's CIC policy.

Citing *Kentucky Oaks Mall Co. v. Mitchell's Formal Wear,* 53 Ohio St.3d 73, 559 N.E.2d 477 (1990), CIC contends Garrett's letters rise to the level of transacting business in Ohio. We disagree. The record reveals these two letters form the only basis for CIC's attempt to establish a prima facie case for personal jurisdiction. Inquiring about whether coverage exists under a contract by letter mailed to a state clearly does not satisfy the type of "continuing obligations" and "substantial connection" anticipated in *Burger King.* Further, CIC's assertion that the two letters translate to Garrett's transaction of business in Ohio also falls short of the minimum contacts requirement. *Kentucky Oaks Mall Co. v. Mitchell's Formal Wear,* 53 Ohio St.3d 73, 75, 559 N.E.2d 477 (1990). Contacting LOMC, a Pennsylvania business, at its Ohio location once by mail hardly indicates that Garrett reasonably expected to be subject to litigation in Ohio courts. Moreover, sending a letter to CIC to make the same inquiry cannot be interpreted as an establishment of Garrett's continuing obligations in Ohio just because CIC is an Ohio entity and the letter from Garrett required CIC to research whether Garrett was covered. In addition, the letter from Garrett to CIC initially was sent to CIC's office in the State of Indiana. Only later did Garrett send a copy of the letter by email to the CIC Ohio headquarters. Lastly, and perhaps most notably, the certificate of liability presented to Garrett in Indiana stated it was a named insured on the LOMC policy, making an alleged lengthy investigation into coverage, as asserted by CIC, unnecessary. It appears CIC's actual claim may be against its own agent, Dawson. This record shows Dawson appears to have acted under apparent authority when it certified to Garrett, that Garrett was a named insured under the relevant CIC policy. In any event, CIC has not met the threshold requirement of establishing that Garrett had minimum contacts in Ohio. Therefore, as CIC failed to

establish a prima facie case for personal jurisdiction of Garrett in the Ohio action, the trial court did not err in concluding it lacked personal jurisdiction over Garrett.

**{¶35}** CIC's first assignment of error is without merit and is overruled.

<u>ASSIGNMENT OF ERROR NO. 2</u>

The trial court erred when it concluded that the Indiana Court was the more convenient forum and dismissed the case on forum non conveniens grounds.

**{¶36}** In its second assignment CIC contends that the trial court considered "impermissible factors" in making its determination that the Indiana court was the more convenient forum. CIC cites two factors that the trial court allegedly erred in considering: (1) the risk of inconsistent judgments from the two courts; and (2) that Indiana was the only court with jurisdiction over all of the parties.

**{¶37}** After determining that it lacked personal jurisdiction over Garrett in the January 5, 2021 judgment, the trial court concluded that, "[j]urisdiction is proper over Cincinnati Insurance Company and Defendant LOMC LLC" but to "avoid inconsistent rulings with respect to the Cincinnati policy's environmental exclusion" the trial court stayed the Ohio action until the parties were served in the Indiana action and jurisdiction was accepted by the Indiana forum. In the second entry issued after this Court's dismissal of CIC's initial appeal, the trial court reiterated its previous order dismissing Garrett as a party for lack of personal jurisdiction, and held that, although the court had personal jurisdiction over CIC and LOMC, the doctrine of *forum nonconveniens* applied, and dismissed the Ohio action in its entirety in favor of the Indiana lawsuit.

<u>Case No. 21 JE 0012</u>

{¶38} *Forum non conveniens* is a discretionary power allowing a court to dismiss a case where another court or forum is better suited to hear the matter on the merits.  A trial court's ruling based on *forum non conveniens* will only be reversed when there has been an abuse of discretion.  *Chambers v. Merrell-Dow Pharm.,* 35 Ohio St.3d 123, 127, 519 N.E.2d 370 (1988).  The doctrine may be invoked by the defendant or sua sponte by the court.  However, even if a plaintiff brings a case in an inconvenient forum, a court will not grant a *forum non conveniens* dismissal if there is no other forum having jurisdiction to hear the case, or if the other forum would not award the plaintiff any damages if plaintiff prevailed.

{¶39} When considering a motion for dismissal based on *forum non conveniens,* the court must weigh specific public and private interests.  *Chambers* at 126-127.  Private interests to be considered by the court include:  (1) the ease of access to evidence; (2) the availability of compulsory process; (3) the cost of obtaining attendance of witnesses in the matter; (4) the convenience and travel expenses incurred by the parties; (5) the ease of viewing any relevant premises; (6) any legal benefits; (7) the enforceability of a judgment and the policy of respecting the plaintiff's choice of forum; and (8) any other practicalities that would assist in making the trial easy, expeditious and inexpensive.  *Chambers* at 127.

{¶40} Public factors to be considered include:  (1) administrative difficulties and delay to other litigants due to docket congestion or the complexity of the case; (2) imposing jury duty on citizens who have very little relation to the case; (3) the interest in having local controversies adjudicated locally; (4) the forum being familiar with the

Case No. 21 JE 0012

applicable law; (5) the difficulty of the case; (6) any anticipated flood of similar cases; and (7) any dispositive changes in the law. *Id.*

**{¶41}** A reviewing court, in determining whether the trial court abused its discretion, "will not independently assess and reweigh each factor, as our review is limited to the narrow determination of whether the trial court abused its discretion" in dismissing an action based on *forum non conveniens. Chambers* at 132-133. A trial court abuses its discretion if its decision is unreasonable, arbitrary or unconscionable. *AAAA Ents., Inc. v. River Place Community Urban Redev. Corp.,* 50 Ohio St.3d 157, 161, 553 N.E.2d 597 (1990). An unreasonable decision cannot be supported by any sound reasoning process. *Id.* An arbitrary decision is made without consideration of the facts or circumstances. *State v. Beasley,* 152 Ohio St.3d 470, 2018-Ohio-16, 97 N.E.3d 474, ¶ 12. An unconscionable decision is one that affronts "the sense of justice, decency, or reasonableness." *Hise v. Laiviera,* 7th Dist. Monroe No. 18 MO 0010, 2018-Ohio-5399, ¶ 29, quoting *State v. Waugh,* 10th Dist. Franklin No. 07AP-619, 2008-Ohio-2289, ¶13.

**{¶42}** Citing *Triad Hunter, LLC v. Eagle Natrium, LLC,* 2019-Ohio-940, 132 N.E.3d 1272 (7th Dist.), CIC argues the trial court abused its discretion in failing to consider all relevant factors and should be reversed. In *Triad*, an oil and gas company that drilled wells in Ohio brought an action asserting *inter alia,* negligence, trespass, and conversion against a chemical manufacturer operating a plant in West Virginia. We concluded the trial court's dismissal for *forum non conveniens* was unreasonable, not because the trial court did not specifically address all private and public factors, but because it ignored relevant facts and circumstances of the case in making its determination. *Id.* at ¶ 55-56. There is no requirement that a trial court set forth its analysis on each of the factors.

*Travelers Cas. & Sur. Co. v. Cincinnati Gas & Elec. Co.,* 169 Ohio App.3d 207, 211, 2006-Ohio-5350, 862 N.E.2d 201 (8th Dist.).  Here, the court noted in its January 5, 2021, judgment:

> Garrett greatly confused the issue by going on and on in its argument about witnesses.  While it is true that Indiana has the greater interest in the environmental impacts there and that most of the witnesses regarding the environmental impact are there, the fact is that none of that is relevant to this case on coverage.  This is a contracts case to determine coverage.  What did or did not happen in Indiana giving rise to that state's claims against LOMC and Garrett is irrelevant in this case.  This case will ultimately be decided on paperwork.  Claims of forum non conveniens based on witness availability is a red-herring.
>
> While Garrett's claim relative to witness availability is a red-herring, the concept of forum non conveniens still applies.  The problem is that the Cincinnati policy's environmental exclusion may be found to be valid in Ohio against LOMC while the same exclusion is found to be <u>in</u>valid in Indiana against Garrett.  That cannot be allowed to happen.  There is only one court having jurisdiction over all parties that could resolve that issue consistently one way or another and that court is in Indiana.

(1/5/21 J.E.)

{¶43}  It is clear from the record that Garrett argued the private factors of witness availability and the burden placed on the defendant, two legitimate factors to be

considered. The court found those factors to be irrelevant to this case, stating this was solely a matter of contract interpretation. However, there is evidence in the record that the trial court took certain other relevant factors into consideration. In the January 5, 2021 judgment, the trial court noted that there was a risk of alternate outcomes were this matter to proceed in the Ohio court because of the conflict of laws regarding the enforceability of the environmental exclusion contained in the insurance policy. This finding speaks directly to the private factors of enforceability of judgment. If the Ohio court concluded the environmental exclusion was unenforceable, this would certainly conflict with a finding by the Indiana court that the same provision was enforceable and, assuming both courts determined Garrett was covered under the policy, there would be a conflict as to whether Garrett could recover any Indiana judgment award of damages. This also goes to the public factor of judicial economy and the ability to expedite judgments, and the possibility of a flood of new cases seeking enforcement of a similar environmental exclusion policy. Therefore, the trial court's reasoning is sound. Although the trial court stayed the matter after making these findings in order to ensure the Indiana court accepted jurisdiction and all parties were served instead of immediately dismissing the matter outright, on remand the trial court unequivocally concluded that the doctrine of *forum non conveniens* applied and dismissed the matter.

*{¶44}* CIC also asserts that we have previously recognized the "first-to-file" or "rule of primacy" in certain contexts. CIC relies on *Carpino v. Wheeling Volkswagen-Subaru,* 7th Dist. Jefferson No. 00JE45, 2001 WL 1137317 (Sept. 21, 2001) where a car dealership brought a cause of action in a West Virginia court against a buyer for failing to pay a parts bill. The buyer filed a counterclaim in the West Virginia action and also filed

a complaint in Jefferson County Ohio. We dismissed the Ohio action based on *forum non conveniens,* concluding that all issues were already before the West Virginia court. Regarding the rule of primacy this Court stated, "[t]he rule of primacy only applies when the subject matter of the two suits are identical and the parties are the same." *Id.* at *2. Thus, only a passing reference on the rule of primacy was espoused, and it focused particularly on the fact that all of the parties and the claims were identical in both actions and the West Virginia case was already underway. *Id.*

{¶45} Garrett argues that the first-to-file rule is not applicable in this matter. We agree. It is clear from this record that the two separate cases herein are not identical and do not consist of the same parties. Both seek a declaration regarding whether Garrett is covered under the policy in question, but the Indiana matter includes additional defendants, such as Dawson, the CIC agent that gave LOMC a certificate of liability listing Garrett as a named insured under the policy. Although the trial court surmised that witness availability was a red herring, the question whether the insurance agency acting as an agent for CIC may have misrepresented that Garrett was covered under the policy would best be addressed in the Indiana action appears entirely relevant. The agency is a named defendant in Indiana, thus making it the more convenient forum. In its Indiana complaint, not only did Garrett seek a declaration of its coverage under the same CIC policy at issue in Ohio, but Garrett also named Assured Partners, LLC and Assured Partners of Ohio, LLC dba Dawson Insurance Agency as additional defendants. This was based on the fact that Dawson provided the certificate of liability on which Garrett relies and Garrett asserted claims in Indiana against CIC and the Dawson agency related to

agency law. Therefore, because the two suits are not identical with identical claims and parties, the first-to-file or primacy rule is not applicable here. *Id.*

**{¶46}** Another issue that was not raised by either party was the procedural effect of dismissing Garrett from the Ohio action for lack of personal jurisdiction. Once Garrett was no longer a party to the action, without dismissal of the action pursuant to *forum non conveniens* the matter would have to proceed with LOMC as the sole named defendant. Although service had been obtained on LOMC by means of its statutory agent in both the Indiana and Ohio actions, they did not file an appearance in either action. Counsel for CIC noted at the hearing on the motion to dismiss that they named LOMC as a nominal necessary party, but that LOMC was in the process of selling its assets and winding up. Therefore, whether the Ohio action could proceed at all is questionable. Certainly, at best, a default ruling against coverage under the policy in Ohio would confuse the issue and unnecessarily create a conflict of laws in the Indiana action.

**{¶47}** Regardless, our *de novo* review of the matter reveals the trial court did not abuse its discretion. It appropriately considered both private and public factors in dismissing the matter under the doctrine of *forum non conveniens* and concluded the Indiana court was the more convenient forum.

**{¶48}** CIC's second assignment of error is without merit and is overruled.

**{¶49}** Based on the foregoing, CIC's first and second assignments of error are without merit and the judgment of the trial court is affirmed.

Donofrio, P.J., concurs.

D'Apolito, J., concurs.

_____

For the reasons stated in the Opinion rendered herein, the assignments of error are overruled and it is the final judgment and order of this Court that the judgment of the Court of Common Pleas of Jefferson County, Ohio, is affirmed.  Costs to be taxed against the Appellant.

A certified copy of this opinion and judgment entry shall constitute the mandate in this case pursuant to Rule 27 of the Rules of Appellate Procedure. It is ordered that a certified copy be sent by the clerk to the trial court to carry this judgment into execution.

## <u>NOTICE TO COUNSEL</u>

**This document constitutes a final judgment entry.**